José Colón, demandante y apelado, *v.* Porto Rico Railway, Light & Power Co., demandada y apelante.

No. 4833.—*Sometido:* Mayo 22, 1929. *Resuelto:* Diciembre 19, 1929.

*J. H. Brown, H. E. González* y *C. Ruiz Nazario,* abogados de la apelante; *Celestino Iriarte, Jr.,* abogado del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

José Colón obtuvo sentencia en la corte de distrito por dos mil dólares como daños y perjuicios con motivo de la muerte de un hijo, ocasionada, según se alega, por la negligencia de la demandada.

De la "relación del caso y opinión" emitida por el juez de distrito tomamos el siguiente extracto:

"La prueba ha demostrado que la demandada tiene en explotación un servicio de carros eléctricos entre Río Piedras y San Juan, por la Carretera Central o Avenida Ponce de León; que el día 3 de mayo, 1925, el carro eléctrico No. 8, propiedad de la demandada, al llegar a un sitio frente a la casa residencia de Ramón N. Delgado, que está situado entre las paradas 21 y 22 de la línea de los carros eléctricos, Avenida Ponce de León, arrolló al niño Manuel Colón y le causó las lesiones graves que causaron su muerte allí y entonces.

La prueba ha demostrado, además, que el niño Manuel Colón cruzaba la Avenida Ponce de León, por el referido sitio, con unas piezas de ropa en un brazo; que en ese momento se dirigían dos vehículos de motor o guaguas en direciones contrarias, o sea, uno para Río Piedras y el otro para San Juan, estando el niño como a metro y medio o dos metros de la vía de los carros eléctricos, cuando un viejo vendedor de carbón gritó al niño 'mira que te coge una guagua'; que entonces el niño cruzó la vía hasta la verja de la casa de Ramón H. Delgado, que está inmediata a la vía, sin aceras; que en el espacio entre la vía y la verja no puede permanecer una persona cuando pasa un tranvía, por no haber sitio suficiente, por lo que el niño, al acercarse el carro eléctrico No. 8 en ese momento, retrocedió inmediatamente y fué arrollado por dicho carro, que le pasó por encima, mutilándolo completamente.

"La prueba ha demostrado también que en el sitio del accidente, la vía de los carros eléctricos está en línea recta y plana, a nivel con la carretera; que el carro eléctrico iba a velocidad regular, moderada, y que antes de arrollar al niño el motorista hizo diligencias o movimientos con el manubrio para parar, tocaba el timbre, pero no paró, ni dió contramarcha, hasta unos cuatro metros del sitio del accidente después de haber arrollado al niño. El testigo Juan Francisco Román, pasajero en el carro, calificó la actuación del motorista como de estar 'equivocado' al hacer movimientos y no parar; esto es, turbado, lo que demuestra que él había visto el niño cruzar la vía. El policía insular Otilio Encarnación también declaró que el motorista sostuvo una lucha para detener el carro, hizo diligencias para parar y no pudo, después de coger el niño con la hamaca. El niño fué sacado de debajo del carro con las tripas por fuera, muerto, después de haberle pasado por encima dos de las ruedas delanteras del lado derecho, en dirección de Santurce a San Juan.

"Al tiempo del accidente el niño tenía 16 años cumplidos de edad, iba a la escuela en Maunabo, donde residía con su padre y

se encontraba accidentalmente en San Juan en casa de una tía suya nombrada Micaela, donde había venido para estar quince días.

"La demandada en este caso no presentó prueba alguna. Descansó en una acción de *nonsuit* que fué declarada sin lugar. En dicha moción sostuvo la demandada que no hubo prueba de negligencia de parte de la demandada o sus empleados, ni tampoco que hubiera podido evitar el accidente, y que no se demostraron daños pecuniarios o materiales sufridos por el demandante.

"En contestación alegó la demandada que en el supuesto de probarse el accidente y los daños y perjuicios, dicho accidente y sus consecuencias se debieron única y exclusivamente a la negligencia de Manuel Colón y de su padre el demandante, cuya negligencia fué la causa próxima e inmediata del accidente y sus consecuencias; y que el supuesto también de que mediara negligencia alguna por parte de la demandada o de sus empleados, también medió como causa próxima e inmediata del mismo, la negligencia contributoria de Manuel Colón y del demandante.

"Manuel Colón no fué negligente. Él cruzó la vía cuando se le gritó que lo alcanzaba una guagua y prontamente retrocedió, después de llegar hasta la verja porque allí podía ser atrapado por el carro eléctrico, y el motorista que vió estos movimientos pudo detener la marcha del carro y evitar el accidente, pero no lo hizo así. La última oportunidad para evitar el accidente la tuvo la demandada y la conducta de su motorista al no detener el carro, no importa que se turbara o equivocara, fué la causa próxima del accidente. *Bird* v. *P. R. Railway Light Power & Co.*, 33 D.P.R. 168; *Rodríguez* v. *P. R. Ry., Light & Power Co.*, 32 D.P.R. 416.

Manuel Colón no estaba cruzando la avenida cuando recibió el aviso del vendedor de carbón. Él y el carro eléctrico iban caminando en la misma dirección de Santurce hacia San Juan por el lado izquierdo de la avenida. Al oír el grito del vendedor de carbón, el muchacho saltó o corrió por sobre la vía hacia la verja y volvió sobre sus pasos hacia la porción de la carretera que ya había recorrido. Para entonces, ya el carro eléctrico se hallaba a cuatro o cinco metros del sitio. El muchacho no cayó sobre la hamaca del carro, sino debajo de ella. No fué llevado o arrastrado a una distancia apreciable. El ya estaba debajo de la hamaca cuando el policía vió que el motorista trataba de parar el carro. Sólo

pasó sobre el cuerpo la primera de las dos ruedas delanteras del lado derecho del carro.

Al tiempo del accidente, la vía no estaba tendida sobre la parte de la avenida regularmente transitada. El riel que estaba más próximo a esa parte se proyectaba de una pulgada o pulgada y media a dos o tres pulgadas sobre la superficie de la tierra. Entre los carriles había una depresión igual en profundidad a la altura de los railes. Un viandante que caminara entre los rieles tendría que andar por sobre las traviesas.

No necesitamos volver a exponer los hechos bosquejados en *Bird* v. *P. R. Ry., Light & Power Co.,* 33 D.P.R. 168, con el fin de hacer una distinción de aquel caso.

Acudiendo al caso de *Rodríguez* v. *P. R. Ry., Light & Power Co.,* 32 D.P.R. 416, hallamos en la página 421, lo siguiente:

" . . . El demandante que se encontraba 'ñangotado' estaba sacando agua que se había acumulado durante su ausencia a medio día. Él estaba a unos dos pies de la vía del tren con su espalda hacia San Juan, de cuya dirección venía el cárro. Había estado trabajando por varias horas al parecer en esta posición encorvada con una pierna un poco más arriba que la otra. Se había retirado sin dificultad alguna, según su propia declaración, de su posición varias veces para evitar los anteriores carros que habían pasado. El motorista manifestó que él lo vió así y en la posición de peligro en que estaba a unos cuatro o cinco metros pero entonces no pudo parar su carro a tiempo. No consta que el motorista tuvo oportunidad de verle antes. Hubo prueba tendente a probar que había una pequeña curva y una calle frecuentada antes de llegar al sitio de peligro en donde también existía un montón de tierra al borde del hoyo donde trabajaba el demandante. La negligencia contributoria del demandante es evidente y no existe razón alguna para la aplicación de la doctrina de la 'última oportunidad posible' (*last clear chance*), doctrina que no parece se levantó en la corte inferior. El demandante dejó de probar que la demandada pudo haber evitado el accidente mediante el ejercicio del debido cuidado. El demandante no tuvo cuidado de la aproximación del carro, y, ocupado enteramente en sacar el agua acumulada, puede haberse in-

clinado sobre un riel demasiado, pero él no estaba en el riel y dentro de la previa experiencia del motorista no había nada al acercarse a este lugar que le hiciera pensar en que la posición de peligro del demandante continuaría; por lo menos dicho motorista no tuvo tal idea hasta encontrarse a cuatro o cinco metros del lugar del accidente, cuando ya era demasiado tarde para parar el carro."

En ese caso, el tribunal se dividió, pero el disentimiento no se basó en ninguna teoría de negligencia de parte del motorista por no haber detenido la marcha dentro de una distancia de cuatro o cinco metros.

En el caso de autos, tanto Román como el policía declararon respecto al esfuerzo supremo que hizo el motorista para detener el carro. Román dice que el carro no se movió más de cuatro o cinco metros después que el motorista empezó a aplicar el freno. Este testigo ocupaba el cuarto asiento de la parte delantera del carro. De la transcripción taquigráfica de su testimonio citamos lo siguiente:

"¿Usted vió si el motorista dió contramarcha a ese carro?

"No, señor, yo noté que el motorista tocaba el timbre del carro y al mismo tiempo hacía movimientos como para parar el carro con el manubrio.

"¿Con el freno quiere decir?

"Sí, señor, pero parece que se equivocó, porque notaba que tocaba el timbre y hacía así, pero siguió el carro caminando."

No hay ninguna otra base en los autos para la conclusión de que el motorista pudo haber parado el carro después que el niño había llegado a la vía, y a tiempo para evitar el accidente.

En la repregunta Román admitió que nada sabía acerca de carros eléctricos o de su mecanismo. El hecho de que no vió que el motorista diera contramarcha no establece ninguna inobservancia u omisión de deber alguno por parte del motorista. Nada hay que demuestre que fuera deber del motorista darle contramarcha al carro mientras iba cami-

nando hacia adelante a velocidad ordinaria, o que esa actuación hubiese evitado el accidente. Nada hay que demuestre que el freno aplicado por el motorista no fuera uno de emergencia, o que fuera el adminículo usado ordinariamente al hacer una parada regular. La única razón para la conclusión de Román al efecto de que el motorista se había equivocado, fué que el carro no hizo una parada completa inmediatamente. No podemos asumir con la corte inferior que una tentativa de dar contramarcha al carro mientras éste permaneciera en movimiento hubiera sido más juiciosa o efectiva que el medio seguido por el motorista en la emergencia con que se confrontaba.

Tal vez podría decirse algo más acerca de la selección por parte de un motorista de un método o manera de dominar un carro eléctrico en una emergencia, pero no creemos necesario discutir este aspecto del caso.

■■ De todos modos, la revocación de la sentencia apelada hubiese sido inevitable, por la falta de relación causal entre el accidente y la demandada. No hay el menor asomo de evidencia en apoyo de la conclusión de la corte de distrito al efecto de que la demandada era dueña del carro eléctrico en cuestión, o de sistema alguno de carros eléctricos.

Nuestra única duda ha sido la de si debe devolverse el caso para nuevo juicio. En cuanto a este extremo, no podemos escaparnos de la conclusión de que la muerte de Manuel Colón se debió a un accidente inevitable, de que no hubo prueba satisfactoria alguna sobre negligencia punible de parte del motorista, y de que el juez de distrito erró al declarar sin lugar la moción de *nonsuit*.

*Debe revocarse la sentencia apelada y desestimarse la acción.*