JUANA HERNÁNDEZ, como madre con patria potestad de su menor hija CARMEN HERNÁNDEZ, demandante y apelada, *v.* PORTO RICO RAILWAY, LIGHT & POWER Co., demandada y apelante.

No. 5182.—*Sometido:* Mayo 7, 1930. *Resuelto:* Junio 15, 1931.

J. H. *Brown,* C. *Ruiz Nazario* y G. E. *González,* abogados de la apelante; J. *Lastra,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La demandante, una niña de dos años, mientras jugaba en el estrecho espacio (como de metro y medio de ancho) entre una casa de vecindad y la vía de los carros eléctricos de la demandada, fué lesionada por uno de dichos carros.

Ninguno de los testigos de la demandante la vió inmediatamente antes de la desgracia, y no hay base satisfactoria para la teoría de que ella permaneciera en el trecho existente entre la vía y la casa de vecindad durante ningún período apreciable de tiempo anterior al momento en que la vieron el motorista y otros dos testigos de la demandada. El testimonio de esos tres testigos indica que ella pasó directa y rápidamente de la casa a la vía. Uno de ellos, un inspector, que iba parado al lado del motorista, dice que ella salió corriendo como del balcón de la casa hacia la vía. Los tres están contestes en fijar la distancia entre el carro y la niña cuando la vieron por primera vez en 4½ ó 5 metros. El motorista dice que él estaba mirando hacia adelante, y que cuando por vez primera la vió, ella se aproximaba a la vía como procedente de la casa, y que entonces estaba como a medio metro de la vía.

El carro estaba desarrollando una velocidad de cinco puntos, y caminaba como a diez o doce millas por hora cuando el motorista vió a la niña. El actuó prontamente, e hizo detener el carro dentro de la menor distancia posible.

La vía era recta, y la vista del trecho entre la vía y la casa de vecindad no estaba obstruída salvo parcialmente quizá por los escalones que conducen al balcón. Ni la forma en que esos escalones estaban construídos, ni la altura del balcón, aparecen de la prueba. Una testigo de la demandante que estaba en el balcón en el momento del accidente, dice que ella se inclinó hacia adelante para ver el carro que se aproximaba. La inferencia es que, de lo contrario, su vista

hubiese sido obstruída por otro edificio que se mencionará más adelante. Si cuando una niña de dos años se disponía a penetrar en el trecho, desde el balcón, o desde la escalera, o desde un punto detrás de ésta, o desde un punto entre las dos casas, pudo haber sido vista por el motorista, no ha sido revelado por la prueba. No podemos asumir que él pudo haber visto a la demandante en cualquier momento antes de que ella apareciera en el espacio al descubierto.

La corte de distrito dictó sentencia a favor de la demandante fundándose en la teoría de que si el motorista hubiera actuado inmediatamente que vió a la niña a una distancia de cuatro o cinco metros del "trole" en vez de esperar que ella se colocara dentro de medio metro de la vía, el accidente podría haber sido evitado. La demandante no se hallaba a 4½ metros del carro en una ocasión y en otra a medio metro de la vía. Ella estaba a 4½ metros del carro y a medio metro de la vía a un tiempo mismo, a saber, cuando el motorista la vió por vez primera. El no tardó en actuar. Su declaración en conjunto no deja lugar a dudas sobre este extremo.

La sentencia no puede sostenerse sobre la teoría del juez sentenciador, y la apelada no sugiere ningún otro fundamento satisfactorio.

La demandante alegó que el sitio en que acaeció el accidente era una vía pública. No hubo prueba sobre esa alegación. La casa de vecindad se hallaba al sur de los rieles del tranvía. En 1912 la Legislatura Insular cedió al municipio de San Juan una faja de terreno al norte de la vía. El mismo año, el Concejo Municipal decidió pavimentarla, habiendo estado desde entonces abierta al pueblo como un paraje público conocido como el Paseo de Covadonga. Una línea trazada paralelamente al rail nórtico de la vía de los carros eléctricos a una distancia de dieciocho pulgadas del mismo, marcaba el lindero meridional de los terrenos así traspasados al municipio. Esta prueba tiende a demostrar

que la servidumbre de paso en ese sitio no formaba parte de ninguna vía pública.

Treinta o cuarenta yardas hacia el este de la casa de vecindad había una calle que en dirección sur conducía al malecón. Al lado sur de la vía, entre esa calle y la casa de vecindad, había otro edificio conocido como el de de Hostos. Hubo prueba testifical de que la gente que vive en la casa de vecindad cruza la vía de los carros eléctricos para ir al sitio o para salir de él. Ni los railes ni las traviesas estaban a ras del suelo, sino que sobresalían como un pie sobre el nivel del terreno. En parte alguna del récord aparece que allí hubiese otro edificio además de la casa de vecindad y del establecimiento de de Hostos, al oeste de la calle transversal ya mencionada. Hubo prueba oral de que muy poca gente usaba el espacio entre esos dos edificios y la vía. Nada hay que demuestre el tamaño de la casa de vecindad, la fecha de su construcción, ni el número de personas que en ella residían. Nada hay que demuestre que los niños acostumbraban usar el trecho entre la vía y la casa de vecindad como sitio de recreo. Un testigo, en respuesta a una pregunta sugestiva dirigídale en la repregunta, se refiere a otro niño como residente en el piso superior de la casa. Fuera de esto, nada hay que demuestre que había otros niños en el edificio. Según ya hemos apuntado, no hay prueba satisfactoria de que la misma demandante estuviera jugando en el trecho entre la vía y la casa de vecindad antes del momento en que se le vió cruzar ese espacio hacia la vía. La declaración del motorista de que estaba mirando hacia adelante no ha sido contradicha por la de ningún otro testigo, ni por las circunstancias concurrentes. El juez de distrito no lo declaró culpable de negligencia por haber dejado de ver antes a la niña, ni creemos que la prueba en conjunto hubiera justificado esa conclusión. El testimonio positivo de otros dos testigos, así como el del motorista, llevan persuasivamente a la conclusión de que el accidente fué inevitable.

Hubo algún conflicto en la prueba respecto a si el motorista tocó campana. El juez de distrito no hizo declaración (*finding*) sobre el particular. Sin consignar opinión alguna en cuanto al deber del motorista de tocar campana cuando se dispone a pasar frente a la casa de vecindad, o a una posible conexión causal entre la falta hipotética de cumplir ese deber y las lesiones recibidas por la demandante, creemos que la preponderancia de la prueba favorece la contención de la demandada en el sentido de que el motorista estaba tocando campana.

█ El que se condujera el carro a diez o doce millas por hora no constituía negligencia civilmente procesable. No puede exigirse a la compañía que conduzca sus carros a una velocidad tal que evite lesionar a todo niño que repentinamente corra de algún sitio de seguridad oculto hacia la vía inmediatamente frente a un carro en marcha.

*Debe revocarse la sentencia apelada, declarándose sin lugar la demanda, sin especial condenación de costas.*