CÁNDIDO DE LA PAZ, demandante y apelante, *v.* WHITE STAR BUS LINE, INC., demandada y apelada.

Núm. 8565.—*Sometido:* Enero 17, 1944. *Resuelto:* Mayo 29, 1944.

*Luis Tirado Géigel,* abogado del apelante; *Enrique Córdova Díaz,* abogado del *Trustee* en quiebra de la apelada.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandante apelante alegó en su demanda, que el día 30 de octubre de 1938, en la parada 2½ de Santurce, en el momento en que cruzaba a pie la Avenida Ponce de León, de sur a norte, fué alcanzado y arrollado por una guagua de la compañía demandada, conducida por uno de sus empleados; que el demandante fué lanzado al pavimento y arrastrado por la vía pública, sufriendo lesiones que le obligaron a recluirse bajo tratamiento médico por más de tres meses; y, por último, que el accidente fué motivado enteramente por la negligencia del conductor del vehículo al conducir éste a gran velocidad, sin reducir su marcha y sin desviarlo hacia la izquierda ni ejercitar ordinaria prudencia para evitar el accidente.

La corporación demandada contestó negando específicamente los hechos de la demanda e interpuso como defensas especiales: (a) insuficiencia de los hechos alegados para constituir causa de acción; (b) que la causa próxima y directa del accidente fué la negligencia exclusiva del demandante; (c) la negligencia contribuyente del demandante; y (d) que no hubo negligencia de clase alguna por parte de la demandada.

El presente recurso fué interpuesto por el demandante contra la sentencia dictada por la Corte de Distrito de San Juan, desestimando la demanda e imponiendo al demandante el pago de las costas.

El apelante alega como único fundamento de su recurso que la corte inferior cometió manifiesto error al apreciar la prueba y al concluir que el accidente se debió a la negligencia del demandante y no a la de la demandada.

Las conclusiones de hecho a que llegó la corte sentenciadora, son como sigue:

"Un domingo, a eso de las dos de la tarde, el demandante, quien hablaba con unos amigos en la acera sur de la Avenida Ponce de

León frente al Capitolio, donde la avenida tiene 17 metros de ancho, al ver aproximarse una guagua que corría por el lado norte de la avenida en dirección a San Juan, decidió cruzar la carretera para abordar la guagua. Los testigos de la demandada dicen que salió corriendo. El demandante dice que cruzó 'a pasos gigantescos', y sus testigos dicen que cruzó ligero pero no corriendo. La corte cree que cruzó corriendo.

"Cuando comenzó a cruzar el demandante, corría otra guagua de la demandada en dirección hacia Santurce, por el lado sur de la Avenida Ponce de León, y muy cerca (el demandante calcula que a unos doce o quince metros, y hubo testigos que dijeron seis pies; probablemente el demandante se aproxima más a la realidad) del sitio donde eligió cruzar el demandante. Este vió la guagua que venía de San Juan, y creyó que podía cruzar frente a ella. De su declaración se desprende que esperaba que, en caso necesario, la guagua se desviara hacia el sur para no arrollarle.

"En vez de desviar hacia el sur, la guagua, a la vez que el chófer aplicaba los frenos, desvió súbitamente hacia el norte, y vino a chocar con el demandante cerca del centro de la avenida. El demandante quedó tendido en la avenida cerca de su centro, y la guagua se detuvo a poca distancia, en la parte norte de la avenida, hacia donde la llevó el súbito desvío que hizo el chófer en su esfuerzo por no arrollar al demandante.

"Uno de los testigos, Virgilio Silva, estimó la velocidad de la guagua, en los instantes que precedieron al accidente, en 35 ó 40 millas por hora. Teniendo en cuenta todas las circunstancias del caso, y principalmente las declaraciones de los otros testigos del demandante, y la forma en que declaró Silva, creemos exagerado el estimado del testigo Silva, como también consideramos exagerados los cálculos de aquellos testigos de la demandada que pretendieron hacer ver que la velocidad de la guagua era alrededor de 20 kilómetros (12.5 millas) por hora.

"Un análisis de la prueba nos lleva a concluir que la velocidad de la guagua era moderada, teniendo en cuenta el ancho de la avenida, y el muy escaso tránsito, y que no excedió de 25 ó 30 millas por hora, velocidad que no puede considerarse exagerada dentro de las circunstancias excepcionalmente favorables que en el lugar y en el momento del accidente reinaban.

"No fué negligente el empleado de la demandada en los instantes que precedieron al accidente, ya que venía por su derecha a una

velocidad moderada. Sí fué negligente el demandante al pretender cruzar, corriendo, frente a la guagua y en momentos en que ésta se encontraba ya tan cerca de él.

"Tampoco fué negligente el chófer de la guagua al desviar hacia su izquierda en los momentos del accidente. Al tirarse el demandante a cruzar la carretera frente a la guagua, el chófer, además de aplicar los frenos, cosa que indiscutiblemente hizo, tenía tres posibles cursos a seguir: seguir derecho, desviar hacia la derecha, o desviar hacia la izquierda. Tenía ante sí el chófer, no a una masa inerte, sino a un ser humano en rápido movimiento, quien podía detenerse, seguir cruzando, o retroceder. Escogió el chófer el curso que le permitía a ambos, al chófer y al demandante, la mayor amplitud de acción, el mayor espacio para maniobrar y evitar el accidente. Creemos que optó por el curso más sabio, y que a su decisión debe el demandante su vida. Pero asumiendo que hubiese sido más sabio desviarse a la derecha, o no desviarse, la decisión del chófer no podría considerarse como un acto de negligencia. Un peatón que súbitamente se coloca en una posición de peligro, frente a un vehículo en movimiento, no puede exigir del conductor de ese vehículo que escoja instantáneamente, entre varios posibles cursos, aquel que luego, después de detenida reflexión, hubiese resultado el más sabio."

Hemos hecho un cuidadoso estudio de la transcripción de la evidencia, que consta de cerca de trescientas páginas, y nos vemos precisados a resolver que las conclusiones de la corte inferior están sostenidas por la prueba. Se trata de uno de esos casos en que el viandante creyó equivocadamente que cruzando la vía pública a paso ligero tendría tiempo suficiente para cruzar antes de que el vehículo que venía en dirección hacia él pudiera alcanzarle. El conductor del vehículo hizo cuanto pudo para evitar arrollar al demandante, pero desgraciadamente sus esfuerzos resultaron infructuosos.

*La sentencia recurrida debe ser confirmada.*