VICENTE Y RAFAEL ÁLVAREZ Y OTROS, demandantes y apelantes, *v.* MANUELA HERNÁNDEZ Y LA PORTO RICAN AND AMERICAN INSURANCE COMPANY, demandadas y apeladas.

Número 10742.

*Sometido:* 7 de enero de 1953. *Resuelto:* 26 de marzo de 1953.

*Juan Nevares Santiago,* abogado de los apelantes; *Córdova & González* y *Alberto Picó,* abogados de las apeladas.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

José Manuel Álvarez Santana, un niño de nueve años de edad, fué arrollado por un automóvil perteneciente a la codemandada Manuela Hernández, el día primero de enero de 1950, en la Calle Fernández García de la ciudad de Luquillo, alrededor de las cuatro de la tarde. Ese mismo día falleció el niño. Sus hermanos, como únicos herederos, presentaron una acción de daños y perjuicios contra Manuela Hernández y su aseguradora, Porto Rican Insurance Co., en la Sección de Humacao del anterior Tribunal de Distrito de Puerto Rico. Después de haberse celebrado la vista del caso en sus méritos, el tribunal de Humacao dictó una sentencia declarando sin lugar la demanda, después de haber formulado, en parte, las siguientes conclusiones sobre los hechos:

"Que en el momento del accidente el automóvil Hudson P-26029 guiado por Carlos Rivera Correa, caminaba por la calle Fernández García del Pueblo de Luquillo hacia Fajardo y su velocidad era aproximadamente de veinte a veinticinco millas y el menor José Antonio Álvarez Santana se encontraba en la acera derecha en dirección de Luquillo a Fajardo, muy próximo a donde se encuentra radicado el Cuartel de la Policía Insular de Luquillo.

"Que el menor José Antonio Álvarez Santana, quien había sido enviado a buscar unas medicinas a la farmacia por María Teresa Ramos, se encontraba jugando con un grupo de muchachos los cuales se empujaban unos a los otros y al tratar de cruzar de la acera hacia la calle, a dos pies de la acera, el automóvil Hudson, licencia núm. P-26029, le dió con el guardalodo derecho y en el momento que el chófer Carlos Rivera se dió cuenta de que el niño trató de cruzar desvió el automóvil hacia la izquierda quedando el automóvil atravesado en la calle.

"Que entre el carro y el menor José Antonio Álvarez Santana, antes del accidente, había una distancia aproximada de quince pies y al salir éste corriendo de la acera hacia la calle no miró

para ningún lado y ocurrido el accidente, el menor cayó en la carretera con la cabeza sobre la acera y el carro quedó a tres pies del sitio a donde fué a caer el menor después de recibir el golpe."

Los demandantes han apelado para ante este Tribunal y han señalado los siguientes errores:

"1. Erró el tribunal inferior al declarar sin lugar la demanda bajo la teoría de que la negligencia del menor fué la causa próxima del accidente.

"2. Erró el tribunal inferior al resolver que el accidente no se debió a negligencia alguna del chófer de la demandada.

"3. Erró el tribunal inferior al apreciar la prueba y al aplicar la ley y la jurisprudencia en forma indebida a los hechos probados del caso."

■ Tal como se indica en Blashfield, *Cyclopedia of Automobile Law*, Vol. 2A, pág. 382, sección 1491, Edición Permanente, "de todos los casos de destrucción de vidas y hogares que han surgido del uso de vehículos de motor, el de destrozo de niños debajo de sus ruedas conlleva el más punzante sentido de tragedia. Ello se debe, en parte, al contraste entre su inocencia e indefensión y la pesada solidez de las máquinas que los aplastan. La defensa del niño siempre ha estimulado los instintos protectores del hombre, civilizado o salvaje, y un conductor humanitario de vehículos debe controlar su máquina en tal forma que la pueda detener con prontitud cuando las circunstancias sean tales que se pueda anticipar, razonablemente, que los niños entrarían y correrían por las calles."

De otro lado, es nuestro deber mantener una actitud de objetividad judicial. Nuestros sentimientos humanitarios de simpatía a los niños no nos deben inducir a establecer, absolutamente, la responsabilidad de conductores de vehículos independientemente de las circunstancias específicas del caso y por el hecho en sí de que un niño sea la víctima de un accidente. Los conductores de vehículos no son garantizadores absolutos de la seguridad de los niños. *Trowell v. Diamond Supply Co.*, 83 A.2d 691; *Hanson v. Binder*, 50 N.W.2d 676.

498

Pero a ellos debe exigírsele la observancia de un mayor grado y extensión de deber de cuidado al enfrentarse con situaciones peligrosas para niños. La objetividad judicial admite una cabal comprensión de las realidades de la vida, y una de esas realidades se refiere a la peligrosidad envuelta en las manifestaciones externas de los impulsos infantiles e instintos de los niños.

En el caso de autos, de acuerdo con las conclusiones sobre los hechos formuladas por el tribunal a quo, el chófer del vehículo lo conducía por la derecha de la calle, a una velocidad, autorizada por la ley, de veinte a veinticinco millas por hora. El niño estaba en la acera, considerada generalmente como un sitio de seguridad, y salió súbitamente a la calle cuando el vehículo estaba a una distancia de 15 pies del niño. El tribunal inferior resolvió que el conductor se enfrentó con una emergencia repentina, ocurriendo un accidente desgraciado e inevitable. La regla general es al efecto de que cuando una persona ocupa un sitio de seguridad e inesperadamente lo abandona y se lanza frente a un vehículo de momento, el conductor no es responsable de las consecuencias del accidente. *Hernández* v. *Acosta*, 64 D.P.R. 171, 182; *Meléndez* v. *Alvarez*, 35 D.P.R. 343; *Portalatín* v. *Noriega*, 33 D.P.R. 790; *Aguayo* v. *Municipio*, 35 D.P.R. 425; *López* v. *Irizarry*, 48 D.P.R. 365; *Hernández* v. *P. R. Ry., Lt. & Power Co.*, 42 D.P.R. 443; *De García* v. *Figueroa & Gautier*, 52 D.P.R. 897; *Martínez* v. *Leavitt*, 42 D.P.R. 826; *Colón* v. *P. R. Ry., Lt. & Power Co.*, 40 D.P.R. 348; *Franco* v. *Serra*, 58 D.P.R. 215; *Figueroa* v. *Vives & Maxán*, 46 D.P.R. 240; *De la Paz* v. *White Star Line*, 63 D.P.R. 686; *Matos* v. *Pabón*, 63 D.P.R. 890; Blashfield, ob. cit., pág. 406, sec. 1498. Véanse, además, las anotaciones en 65 A.L.R. 192, 197, y 113 A.L.R. 528, 536, sobre responsabilidad por daños a niños que se lanzan súbitamente a la calle. Esa regla general ha sido seguida en algunos casos, en cuanto a niños estacionados en una acera. *Wilson* v. *Butler Motor Transit Co.*, 84 A.2d 207; *Schmerfeld* v. *Hendry*, 1952, 245 P.2d 420.

No obstante lo anteriormente expuesto, las circunstancias específicas de este caso no autorizan la aplicación de la doctrina del accidente inevitable. El tribunal de Humacao formuló una conclusión al efecto de que el niño que fué víctima del accidente estaba con otros niños en la acera, jugando y empujándose mutuamente, inmediatamente antes de él lanzarse a la calle. Aunque ello no fué objeto de conclusiones por la corte inferior, se demostró ante el tribunal a quo, mediante prueba incontrovertida y no sujeta a conflicto de clase alguna, que los niños, además, estaban corriendo y "alborotando" en la acera; que el accidente ocurrió en una calle recta, habiendo una visibilidad clara en el momento del accidente; que esa calle era ancha y daba margen para que cupiesen tres vehículos; que al ocurrir el accidente no había otros vehículos inmediatos al sitio donde ocurrió el impacto y que el conductor del automóvil no tocó *claxon* ni aviso de clase alguna. Además, el tribunal a quo concluyó específicamente que el vehículo en cuestión era conducido a dos pies de la acera al ocurrir el accidente.

La conducta y los movimientos de los niños en la acera conllevaban una situación potencialmente peligrosa. Ellos no estaban estacionados fijamente en la acera ni estaban bajo la custodia y protección de una persona adulta. Estaban jugando, corriendo y empujándose mutuamente. Ello daba lugar a que el conductor del vehículo pudiese anticipar razonablemente que uno de los niños se lanzase a la calle, como una consecuencia del juego infantil. Existía la probabilidad razonable de que uno de los niños dejase la acera y fuese a la calle. La conducta de los niños daba lugar a ese riesgo y el conductor del vehículo venía obligado, razonablemente, a anticipar el que esa situación inherentemente peligrosa se pudiese materializar a través de algún movimiento súbito de un niño con dirección a la calle. La negligencia es función de riesgos y surge del incumplimiento del deber de actuar con cuidado ante una situación peligrosa. Si determinada conducta peligrosa es anticipable, ello da lugar al deber de

500

actuar con cuidado. La doctrina del accidente inevitable requiere, en su aplicación a casos como el de autos, el que la conducta de la víctima sea inesperada. Si esa conducta era razonablemente anticipable y el conductor del vehículo ha tenido la oportunidad de controlar y conducir el automóvil en tal forma que el accidente se hubiera podido evitar, ello es origen de responsabilidad.

■ Las reglas prevalecientes en cuanto al cuidado que debe observar el conductor de un vehículo en lo relativo a transeúntes o peatones adultos no son estrictamente aplicables en cuanto a niños de poca edad ya que, con respecto a estos últimos, debe requerirse un mayor grado de cuidado, medido por el mayor peligro envuelto, en vista de que los niños tienen una reducida capacidad de reflexión, actuando ellos de acuerdo con sus instintos e impulsos infantiles. Por lo tanto, el conductor de un vehículo debe ejercer un mayor grado de vigilancia y control al aproximarse a niños. *Yokeley* v. *Kearns*, 25 S.E.2d 602; Blashfield, ob. cit. Vol. 2A, pág. 383 et seq. Ello es especialmente cierto cuando el vehículo se aproxima a una escuela o a un grupo de niños que estén jugando o corriendo. *Figueroa* v. *Picó*, 69 D.P.R. 401; *King* v. *Griner*, 1952, 60 So.2d 177; *Cotant* v. *United States*, 103 F. Supp. 770 (1952); *McMinn* v. *Lilly*, 60 So.2d 603 (1952); *Cimo* v. *Karstendiek*, 173 So. 548; *Brown* v. *Wade*, 145 So. 790.

■■ En el caso de autos, el conductor del vehículo pudo haber evitado el accidente. Sin considerar ningún factor aislado como determinante de la cuestión, todas las circunstancias específicas de este caso, en conjunto, implican responsabilidad de la parte demandada. Es cierto que el chófer conducía el automóvil a una velocidad autorizada por la ley, pero ese hecho, por sí solo, no exime de responsabilidad. El conductor estaba obligado, razonablemente, a anticipar que el niño podría lanzarse a la calle, y él debía haber reducido más aún la velocidad para poder conservar un control más efectivo sobre el vehículo para evitar un accidente. Aún si se

trataba de una emergencia, ella era una emergencia anticipable. Antes del momento específico del accidente el chófer debió haber desviado el vehículo más hacia el centro de la carretera para que él no estuviese tan cerca de la acera al llegar al sitio donde estaban los niños. La calle era ancha y en esos momentos no había movimiento de vehículos en ese sitio y, por lo tanto, no había nada que impidiese que él tomase esas precauciones. El accidente no hubiera ocurrido si él hubiese actuado en la forma que hemos expuesto.

█ El hecho en sí de que un niño esté estacionado fijamente en una acera no implica, generalmente, que el conductor de un automóvil tenga que detener la marcha de su vehículo o tomar otras precauciones extraordinarias. Pero ésa no fué la situación en el caso de autos. Cada caso debe resolverse de acuerdo con sus propias circunstancias específicas. Bajo las circunstancias de este caso debe imponerse responsabilidad a los demandados.

█ Surgen en este caso dos problemas entrelazados, uno de negligencia y otro de causación. Bajo cualquier definición aceptable del concepto de negligencia, los demandados deben ser responsables en este caso. Si se considera la negligencia como una función de riesgos anticipables, o sea, como el incumplimiento del deber de actuar con cuidado al enfrentarse el actor con una situación peligrosa, es indudable que el conductor del vehículo perteneciente a la codemandada Manuela Hernández se enfrentó con una situación peligrosa en vista de que había niños que estaban en la acera corriendo, empujándose y jugando de manos. El testigo de los demandados Héctor Soto Tapia declaró que los niños venían por la acera "alborotando... venían de allá para acá corriendo y jugando de manos". Más aún, declaró este testigo que el niño fallecido iba corriendo por el borde de la acera. Un "hombre razonable" que hubiese estado colocado en la misma posición del conductor del vehículo debió haber anticipado que, como consecuencia natural y prolongación de los juegos y movimientos de los niños, uno de ellos se hubiese tirado a la calle.

Como ya hemos indicado, no se trataba de adultos que estuviesen en la acera y ni siquiera estaba envuelta una situación en que un niño estuviese estacionado fijamente en la acera. Se trataba de niños en movimiento que se estaban empujando mutuamente y la propia víctima del accidente estaba corriendo por el borde de la acera. Evidentemente la situación era potencialmente peligrosa y evidentemente el conductor debió haber anticipado la probabilidad de que uno de los niños se lanzase a la calle. Estaban presentes todos los factores o ingredientes de una conducta negligente y la realidad con que se enfrentaba el conductor le imponía a él un claro deber de actuar con especial cuidado para evitar daños a uno de los niños. Tal como se indica en 37 Yale L. J. 618, 619, nota 3: "Es obvio que un actor debe ser requerido a conducir con más cuidado cuando sea probable que su conducta ponga en peligro a niños que cuando el peligro se refiera solamente a adultos. Generalmente, a menos que un demandado tenga razones para creer lo contrario, él debe asumir que las personas ... reaccionarán como ellas están generalmente supuestas a reaccionar bajo las circunstancias. Los niños actúan con menos cautela para proteger su propia seguridad que los adultos. En vista de que esa realidad es de conocimiento general, un demandado no solamente tiene derecho a asumir tal cosa sino que además está obligado a tener conocimiento de esa situación, y debe actuar de acuerdo con ella. Al determinarse la negligencia de un demandado con respecto a un niño puede ser importante si el demandado debió o no haber previsto o anticipado cierta clase de conducta de parte del niño."

Si la negligencia, o la causación, se basa en la probabilidad de evitar el daño, o sea, en el concepto de que, de haber actuado un demandado en otra forma el accidente se hubiera evitado, ello implica también responsabilidad de parte de los demandados en este caso. Ya hemos visto que el accidente pudo haberse evitado si el conductor del vehículo hubiese reducido la velocidad o si él hubiese conducido el vehículo más

lejos de la acera, cosa que él podía haber hecho en este caso en vista de que no había ningún otro vehículo en la carretera en esos momentos. Aparentemente el tribunal a quo le dió importancia a dos factores, a saber: (1) que el vehículo estaba siendo conducido a una velocidad autorizada por la ley, y (2) que cuando el niño se lanzó a la calle había solamente una distancia aproximada de 15 pies entre el carro y el niño y que, por lo tanto, por más esfuerzos que hubiese realizado el conductor para detener la marcha del vehículo y desviarlo a la izquierda él no hubiese podido evitar el accidente. En cuanto al primer factor señalado, es aplicable la regla general al efecto de que el hecho de que un carro sea conducido a una velocidad autorizada por la ley no exonera, por sí solo, de responsabilidad al conductor si, en vista de las circunstancias del caso, él debió haber conducido el carro a una velocidad menor de la autorizada por la ley. Cuando hay niños en una acera, es deber de un conductor el guiar su vehículo a tal velocidad que le permita a él poder controlar el carro en caso de una emergencia. Blashfield, ob. cit., Vol. 2A, pág. 395, 396; *Doyle* v. *Nelson*, 11 So.2d 645. La negligencia no debe definirse exclusivamente por una velocidad específica, sino que debe ser determinada de acuerdo con la velocidad que sea requerida en vista de las circunstancias específicas de una situación. En cuanto a la alegación al efecto de que sólo mediaba una distancia de 15 pies entre el carro y el niño cuando éste último se lanzó a la calle, lo cual hacía imposible la evitación del daño, ese argumento asume la cuestión envuelta, o sea, si asumimos que el conductor no estaba bajo el deber de reducir la velocidad entonces la distancia fué la que medió en el caso de autos. Sin embargo, si el conductor hubiese reducido la velocidad, entonces, cuando el niño se lanzó a la calle, la distancia entre el niño y el vehículo hubiera sido mucho mayor y el conductor del vehículo hubiera podido evitar el accidente.

Nos resta considerar la alegación de que el niño José Manuel Álvarez Santana fué culpable de negligencia contri-

buyente. Independientemente de cualquier discusión relativa al establecimiento de presunciones incontrovertibles o rebatibles en cuanto a la ausencia de negligencia de un niño de acuerdo con su edad (174 A.L.R. 1080, 1103, 1110, 1149; 37 Yale L. J. 618: "The Standard of Care Required of Children") la regla general prevaleciente, que ha sido aceptada por este Tribunal, es al efecto de que a niños de poca edad no se les requiere que cumplan con las normas de conducta que es razonable esperar de los adultos y su conducta debe juzgarse por la norma de conducta que pueda esperarse de un niño de igual edad, inteligencia y experiencia, bajo circunstancias similares a las que hayan surgido en el caso. *Cruz* v. *Rivera*, 73 D.P.R. 682, 692; *Figueroa* v. *Picó*, supra; *Hernández* v. *Acosta*, 64 D.P.R. 171; 174 A.L.R. 1084. Se ha indicado que la norma de conducta requerida de un niño cuando su propia responsabilidad está envuelta puede ser distinta a aquélla requerida cuando él trata de recobrar de un demandado que ha sido negligente ya que existe una pronunciada política pública de proteger a los niños contra pérdidas atribuibles a su propia falta de madurez. Incidentalmente, en *Michalsky* v. *Gaertner*, 5 N.E.2d 181, se resuelve que no fué negligente, como cuestión de ley, un niño de 9 años de edad que corrió a cruzar una calle sin mirar en ninguna dirección. Véanse además 36 Mich. L. Rev. 328; 95 Pa. L. Rev. 93, 96.

A la luz de los preceptos legales arriba enunciados consideremos la prueba presentada en este caso en cuanto a la conducta del niño en cuestión. Jesús Bird Gómez, testigo de la parte demandante, declaró lo siguiente:

El muchacho se tiró de la acera a la calle y llegó como a dos pies de retirado de la acera, "entonces vió venir el carro y trató de huir para adentro de la acerca de la botica donde estaba parado"; el carro le dió con el guardalodo delantero de la parte derecha al muchacho, y le dió en la boca, de frente y lo movió como de 8 a 10 pies de retirado del carro; la cabeza

del niño quedó encima de la acera; y el niño se tiró de la acera a la calle y "se metió como dos pies en la calle"; quiso huir para la acera y entonces fué que el carro le dió con el guardalodo derecho; el niño "trató de defenderse corriendo a la acera"; el testigo no sabe si el muchachito se tiró a la calle con la intención de cruzar pero sí sabe que él se tiró a la calle; el niño se bajó dos pies más o menos de la acera.

Héctor Soto Tapia, testigo de los demandados, declaró lo siguiente:

"Iba un grupito de muchachos jugando de manos y uno de ellos trató de cruzar la calle, pero al cruzar en ese momento pasó el carro, el muchacho parece que oyó el carro, trató de virar y cuando viró de posición venía el carro y en ese momento el carro le dió un 'cantazo'; estaban todos jugando de mano en la acera; el niño trató de cruzar, de atravesar, iba corriendo; él cayó en la acera con la cabeza puesta encima de la acera; al tirarse a la calle el muchacho siguió corriendo, él no miró para ningún lado; los niños estaban empujándose unos a los otros y entonces fué que el niño salió corriendo a cruzar la calle; cuando ellos se empujaban "ellos venían de allá para acá corriendo, alborotando y jugando de manos"; el niño venía por la misma acera, en el borde de la acera.

Esa fué, esencialmente, la prueba en cuanto a la conducta del niño. Es evidente que él no fué responsable de negligencia contributoria. La prueba demuestra que el acto de tirarse el niño a la calle fué parte integrante de los movimientos del niño dentro de la acera, y estaba relacionado con el juego que él tenía con otros niños. Hubo una unidad de movimientos en el tiempo y en el espacio. El movimiento del niño al tirarse a la calle fué una actuación natural y no implicaba negligencia de su parte. No hay prueba en los autos de que al tirarse a la calle el niño hubiese visto, o hubiera podido ver el vehículo que venía en marcha, especialmente en vista de que no hubo prueba alguna al efecto de que el conductor del vehículo tocara claxon en forma alguna y además, el movimiento del niño en la calle se extendió a una distancia de dos pies y ello realmente no implicaba una conducta negligente

de su parte. Aun con un movimiento tan limitado él trató de volver a la acera cuando se dió cuenta del peligro en que estaba y efectivamente se movió hacia la acera, hasta el punto de que, cuando ocurrió el impacto, la cabeza de él quedó sobre la acera. Debemos observar además que el golpe fué ocasionado por el guardalodo delantero derecho del vehículo, y el golpe fué en la cara, en la boca del niño. Desde un punto de vista objetivo y realista la conducta del niño no fué negligente.

*Debe revocarse la sentencia apelada y devolverse el caso al tribunal a quo para que fije la cuantía de los daños sufridos por la parte demandante y dicte sentencia en forma compatible con esta opinión.*

El Juez Presidente Señor Snyder disintió.

OPINIÓN CONCURRENTE emitida por el JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ con la cual concurre el JUEZ ASOCIADO SEÑOR SIFRE.

Por sabia, ponderada y justa—y por correcta en la aplicación del derecho a los hechos de este caso—concurro en la opinión del Tribunal, a la que deseo ahora agregar lo siguiente: si prevaleciera el criterio expuesto en la opinión disidente, los conductores de vehículos de motor en Puerto Rico tendrían licencia para matar niños en nuestras carreteras siempre que condujeran sus vehículos "a una velocidad autorizada por la ley". La precaución que en tales casos vendrían obligados a observar sería tan sólo la de no violar la ley en sus disposiciones específicas constitutivas de delito.

El calificar nuestra decisión de "precedente altamente desgraciado", según se hace en la opinión disidente, como atenuante de su propia sinrazón, no está justificado bajo los hechos de este caso, como revela el cuidadoso análisis que de los mismos—así como de la doctrina legal sobre la materia—se hace en la opinión del Tribunal.

Opinión Disidente del Juez Asociado Señor Marrero con la cual concurre el Juez Asociado Señor Pérez Pimentel.

Convengo con la opinión de la mayoría en que si bien "los conductores de vehículos no son garantizadores absolutos de la seguridad de los niños . . . a ellos debe exigírseles la observancia de un mayor grado y extensión de deber de cuidado al enfrentarse con situaciones peligrosas para niños." Convengo, asimismo, con dicha opinión en que "la regla general es al efecto de que cuando una persona ocupa un sitio de seguridad e inesperadamente lo abandona y se lanza frente a un vehículo de momento, el conductor no es responsable de las consecuencias del accidente," y en que, con ciertas limitaciones, "esa regla general ha sido seguida en algunos casos, en cuanto a niños estacionados en una acera." También, en que "las reglas prevalecientes en cuanto al cuidado que debe observar el conductor de un vehículo en lo relativo a transeúntes o peatones adultos no son estrictamente aplicables en cuanto a niños de poca edad ya que, con respecto a estos últimos, debe requerirse un mayor grado de cuidado, medido por el mayor peligro envuelto, en vista de que los niños tienen una reducida capacidad de reflexión, actuando ellos de acuerdo con sus instintos e impulsos infantiles." Con todo ello, repito, convengo. Empero, en lo que no estoy de acuerdo es que bajo los hechos de este caso deba dictarse sentencia en favor de los demandantes.

Si conforme concluyó el tribunal a quo el menor se lanzó a cruzar la calle súbita e inesperadamente cuando el vehículo de la demandada estaba tan sólo a 15 pies de distancia, no es posible concebir cómo pudo evitarse el accidente. Al expresarme en la forma en que lo he hecho estoy consciente de que, aunque el tribunal sentenciador no hizo conclusiones de hechos al efecto, de la evidencia que tuvo ante sí surge de manera palmaria que el occiso y otros niños corrían y alborotaban en la acera; que la calle en la parte que ocurrió el accidente es

recta; que la visibilidad al momento del mismo era clara; y que esa calle era lo suficientemente ancha para dar cabida a la vez a tres vehículos.

Si, según concluyó dicho tribunal, el automóvil causante del daño marchaba a una velocidad de veinte a veinticinco millas por hora, una simple operación aritmética demostrará que, aceptando como correcta la primera de las dos velocidades mencionadas, en un solo segundo—todos sabemos cuán corta es esta medida de tiempo—el vehículo caminó 29 pies. Si aceptamos como correcta la segunda, dicho vehículo corrió en un segundo 36.36 pies. Al marchar a una u otra velocidad el conductor estaba dentro del marco de la ley. Artículo 15(b) de la Ley núm. 279 de 5 de abril de 1946, págs. 599, 637, según fué enmendado por la núm. 156 de 26 de abril de 1951, págs. 369, 371. Además, si aceptamos como correcta la tabla que aparece en la obra Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 9, Parte 2, a la pág. 706, el conductor promedio de vehículos de motor tarda ¾ de segundo en reaccionar ante un peligro. Véanse, al mismo efecto, *State* v. *Belle Isle Cab Co.,* 71 A.2d 435; *Kaan* v. *Kuhn,* 187 P.2d 138. Aceptando que el chófer en este caso reaccionara dentro del período especificado, contado el mismo a partir del momento en que el menor se lanzó súbitamente a la calle, el accidente hubiera sido inevitable, puesto que el vehículo siempre hubiera corrido más de 15 pies antes de iniciarse la reacción. El conductor se enfrentó, sin duda, con una súbita emergencia y tomó todas las precauciones que era posible tomar: frenó inmediatamente; se echó hacia la izquierda; y su vehículo quedó detenido a tres pies de distancia de la víctima,(¹) cruzado en la carretera.

No hay prueba en los autos de que el chófer viera a los niños jugando y alborotando en la acera. Tampoco la hay de que no hubiera algo que obstruyera su visión. Por otra

---

(¹) Éste es otro factor que revela cuán despacio marchaba. *Efret* v. *Quiñones,* 40 D.P.R. 192, 196; Blashfield's, obra y tomo citados, secciones 6233 y 6237, págs. 694 y 705; *Koustaky* v. *Grabowski,* 34 N.W. 2d 893; *Wilkins* v. *Stuecken,* 225 S.W. 2d 131.

parte, no acepto la conclusión de que "el conductor del automóvil no tocó *klaxon* ni aviso de clase alguna." A este respecto hay carencia absoluta de prueba en los autos. La única referencia que sobre el particular aparece en la transcripción de evidencia es la que hizo el testigo Jesús Bird Gómez al preguntársele por el letrado de los demandantes si recordaba si el carro tocó *klaxon*, a lo cual contestó, "yo no oí". Al interrogarle la corte sobre el mismo aspecto, el testigo repitió, "yo no oí". De esas meras palabras concluye la opinión de la mayoría que el automóvil envuelto en el accidente no dió aviso de su proximidad. Tal conclusión, repito, no está sostenida por la prueba. El hecho de que el testigo no oyera que se hubiera tocado bocina no significaba que eso no hubiera ocurrido. Pudo tocarse y él no oírla, especialmente si, según demuestra la transcripción, el testigo hablaba en esos momentos con Felipe García. No obstante, aun admitiendo a los fines de la argumentación que no se dió aviso de la proximidad del vehículo, "un conductor no viene obligado a tocar bocina constantemente al correr las calles de una ciudad populosa, a menos que el peligro de una persona sea aparente." *Pueblo* v. *Castillo*, 45 D.P.R. 872; *Aguayo* v. *Municipio de San Juan*, 35 D.P.R. 425.(²)

¿Qué precauciones mayores puede tomar el conductor de un vehículo que las que el de este caso tomó? Conducía el mismo a velocidad autorizada por ley, por la carretera que desde San Juan conduce a Fajardo y que al atravesar el pueblo de Luquillo forma una de las calles de éste, lo más a su derecha posible (artículo 17(d) de la Ley 279, supra, según fué enmendado por la Ley 492 de 15 de mayo de 1952, pág. 1061) y miraba en la dirección en que marchaba. Esto último quedó palpablemente demostrado por la rapidez con que

---

(²) *Cf. Pueblo* v. *Ramos*, 43 D.P.R. 71, donde se dice a la pág. 77 que "en cuanto a no haber tocado *klaxon* ni bocina, la ley sólo impone el deber de tal aviso al pasar a peatones o a otros vehículos y en las curvas,...". Véase, además, el artículo 17(e) de la Ley 279, supra, según fué enmendado por la núm. 492 de 1952, página 1061.

actuó al lanzarse el menor súbitamente a la carretera en momentos en que el vehículo se hallaba a 15 pies de distancia. Mayores precauciones, en mi opinión, no es posible tomar.(³)

No creo que por el mero hecho de que el conductor de un vehículo de motor vea que en una de las aceras de la calle por donde discurre hay niños jugando y corriendo, tenga el deber de detenerse. Basta, a mi juicio, que esté a la expectativa y que marche a velocidad moderada. Estos requisitos fueron plenamente cumplidos.

He examinado todas y cada una de las citas que aparecen en la opinión de la mayoría. Si bien sostienen los principios de derecho en ella enunciados, sin embargo, no hay una sola que sostenga la conclusión final a que se llega.

Del millón y pico de personas cuyas vidas han sido segadas desde su advenimiento por ese artefacto peligroso, conocido por vehículo de motor, tan útil, necesario e indispensable al progreso de los pueblos, miles han sido niños. No obstante, según se indica en la opinión de la mayoría, "nuestros sentimientos humanitarios de simpatía hacia los niños no nos deben inducir a establecer, absolutamente, la responsabilidad de conductores de vehículos independientemente de las circunstancias específicas del caso y por el hecho en sí de que un niño sea la víctima de un accidente." No quiero con esto sugerir siquiera remotamente que la conclusión a que ha llegado la mayoría del Tribunal lo ha sido por las simpatías que el ponente y los distinguidos jueces que con él concurren han sentido hacia los niños, sin tomar en consideración las circunstancias específicas que concurren en el caso. Lo que sí quiero expresar es que al interpretar la doctrina generalmente aplicable a situaciones como la aquí envuelta, han ido muy lejos

---

(³) Es conveniente hacer constar que el sitio donde ocurrió el accidente no es uno junto a una zona escolar ni en que normalmente juegan niños de corta edad. Véase *Figueroa* v. *Picó*, 69 D.P.R. 401, 404. Por el contrario, se trata de una calle que forma parte de una carretera insular, por donde discurre mucho tránsito. Además, el sitio del accidente no queda junto a la intersección de calles ni junto a una curva, sino a bastante distancia de ambas.

y establecido un precedente altamente desgraciado. Para que en casos de esta índole pueda exigirse responsabilidad al conductor de un vehículo es menester que dicho conductor incurra en culpa o negligencia. En ausencia de ésta deberá exonerársele de toda responsabilidad. Artículo 1802 del Código Civil, ed. 1930. *García* v. *S.J.L. & T. Co.*, 17 D.P.R. 626, 629; *Godreau* v. *The American R. R. Co.*, 17 D.P.R. 791; *Maldonado* v. *Hamilton*, 32 D.P.R. 224, 228; *Aldiba* v. *P. R. Railway, Lt. & P. Co.*, 41 D.P.R. 75; *Sucn. Ortiz* v. *Ramírez*, 68 D.P.R. 498. Según se dijo en *Frank* v. *Cohen*, 135 Atl. 624, 625, "la negligencia de un demandado debe establecerse con prueba directa o mediante aquellas circunstancias que razonablemente lleven a la conclusión de que existió un acto específico de negligencia y que el mismo fué la causa próxima del accidente." No veo en verdad en qué culpa o negligencia incurrió el conductor en este caso. Ha debido, en su consecuencia, dictarse sentencia confirmando la apelada.

Veamos a grandes rasgos algunos de los casos del continente que envuelven una cuestión similar a la que nos concierne:

En *Lucas* v. *Bushko*, 171 Atl. 460, se dice que "cuando el conductor de un automóvil ve a un niño colocado en un sitio peligroso, o cuando tiene motivos para creer que el niño puede correr hacia un sitio de peligro, y el tiempo le basta para detener el vehículo, de conducirlo debidamente, su deber es ejercer aquel cuidado que es razonablemente necesario para evitar el accidente . . . . *Si el niño se coloca súbitamente frente al vehículo en movimiento, el demandado, desde luego, no será responsable.*" (Bastardillas nuestras.) En sentido similar se pronuncian *Purdy* v. *Hazeltine*, 184 Atl. 660, 661; *Bowman* v. *Stouman*, 141 Atl. 41, 43; *Burlie* v. *Stephens*, 193 Pac. 684, 686; *Gettemy* v. *Grennan Bakeries*, 21 A.2d 465, 467; *Frank* v. *Cohen*, supra y *Carter* v. *Garraway*, 138 So. 143, 145. Estamos enteramente de acuerdo con ese principio. Es el que ha debido aplicarse en este caso.

Lo procedente era confirmar la sentencia apelada.