CRESCENCIO RODRÍGUEZ RAMÍREZ, menor representado por su madre RAMONA RAMÍREZ MATOS, demandante y recurrido, *v.* ÁNGEL M. FRANQUI VIERA, CAGUAS BUTTON COMPANY y CAROLINA CASUALTY COMPANY, demandados y recurrentes.

*Número:* 523    *Resuelto:* 10 de diciembre de 1962

*Rafael Martínez Álvarez, Jr.* y *Alex González,* abogados de los recurrentes; *P. Roldán Figueroa* y *Daisy Ruiz de Roldán,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Ramona Ramírez Matos, en su carácter de madre en ejercicio de la patria potestad sobre su hijo Crescencio Rodríguez Ramírez, instó una acción para recobrar los daños y perjuicios, valorados en $6,000, que alegó sufrió su citado hijo con motivo de un accidente ocurrido el 11 de diciembre

de 1959, causado por el descuido y negligencia en que incu-rrió el chófer codemandado Angel M. Franqui Viera al guiar un vehículo de motor perteneciente a su patrono la codemandada Caguas Button Company. Negaron los demandados "general y específicamente todos y cada uno de los hechos alegados en la demanda" y como defensas especiales expusieron que el accidente se debió "a la negligencia e imprudencia del demandante o a lo sumo éste fue negligente y su negligencia contribuyó a su causa."

Fue el pleito a juicio. Lo falló el tribunal de instancia declarando con lugar la demanda, concediendo $2,000.00 al niño demandante como indemnización por todos los daños y perjuicios que sufrió y $300.00 para honorarios de abogados, "sin [sic] las costas."

En este recurso de revisión interpuesto por la parte demandada, sostiene ésta que el tribunal sentenciador cometió error (1) al no aplicar al caso de autos la teoría de accidente inevitable, (2) al concluir que el accidente se debió al descuido y negligencia del chófer y (3) al aplicar la jurisprudencia en forma indebida a los hechos probados.

Como se acepta expresamente la corrección de las determinaciones sobre los hechos que hizo el juez superior, excepto en un pequeño detalle que los propios recurrentes estiman que "no es determinante en la decisión de este caso", es conveniente transcribirlas. Su texto es el siguiente:

"DETERMINACIONES DE HECHOS.

"1. El día 11 de diciembre de 1959, en horas de la tarde, en un puente estrecho de concreto, con barandas de metal, que pertenece a la carretera que conecta a Caguas con Aguas Buenas, y que ubica en el Km. 1 Hm. 1 de esa carretera, un grupo de aproximadamente ocho muchachos de poca edad 'garateaban', se decían palabras insultantes, se empujaban de manos y estaban en movimiento continuo. Dentro de ese grupo de niños estaba el demandante Crescencio Alejandro Ramírez, quien contaba aproximadamente nueve años de edad. A la sazón, el codemandado Ángel M. Franqui, conducía por dicha carretera en gestiones de su cargo o empleo con la codeman-

dada Caguas Button Company, un vehículo 'pick-up' propiedad de esa empresa marca De Soto, y con tablillas C 304-830. Este vehículo estaba cubierto por una póliza extendida por la compañía Carolina Casualty Company, en relación o aplicación al riesgo que surge de los hechos de este caso.

"2. Al aproximarse al puente en cuestión, el señor Franqui venía conduciendo como a 30 millas por hora, velocidad ésta que redujo al entrar al puente a una de 15 a 20 millas. Esta última velocidad la mantuvo mientras el vehículo pasaba próximo al grupo de niños a su izquierda y como a una distancia de 2 a 3 pies de los mismos; el conductor estaba dejando aun algún espacio libre a su derecha dentro del puente, y hasta la baranda derecha.

"3. Los niños ocupaban parte del puente a la izquierda del vehículo. El conductor los había visto y observado desde una distancia de más de 100 metros, antes de entrar al puente, y había podido apreciar la actividad que desplegaban los muchachos.

"4. En el puente en cuestión, debido a lo angosto que es, no caben bien dos automóviles que transcurran en direcciones opuestas. Por esta razón los automóviles prefieren detenerse para evitar pasar dentro del referido puente junto a un carro que marcha en dirección contraria.

"5. Al tiempo en que el vehículo ya mencionado pasaba junto a los niños, éstos continuaron empujándose uno al otro; uno de ellos trigueñito, que había sido empujado a su vez, más o menos simultáneamente, empujó al niño perjudicado, el demandante, quien fue a dar contra el lado izquierdo de la camioneta que pasaba a muy corta distancia.

"6. La fuerza o el impulso correspondiente al movimiento del vehículo en marcha lanzó al niño Crescencio Alejandro Ramírez contra la baranda izquierda de metal del puente. Como resultado inmediato, el niño quedó en el piso inconsciente sangrando por los oídos, por la nariz, y por una herida en la región mastoidea izquierda, detrás del pabellón de la oreja.

"7. El conductor, el codemandado Ángel M. Franqui, vio cuando empujaron a Crescencio sobre su vehículo, sintió luego un golpe leve cuando el muchachito dio contra su camioneta, entonces desvió el vehículo hacia la derecha y se detuvo pocos pies más adelante.

"8. El niño herido y todavía inconsciente fue llevado al

Hospital Municipal de Caguas donde más tarde recobró el conocimiento. Estuvo seis días hospitalizado allí bajo observación. El médico que lo atendió, el Dr. Francisco Rivera Cestero, pudo determinar que tenía una lesión leve en la rodilla izquierda y por estudios radiográficos que no sufría de fractura craneal alguna. Según el dictamen médico el niño, sin embargo, sufrió una fuerte contusión cerebral y una herida de 2 pulgadas de longitud en la región mastoidea izquierda detrás de la oreja izquierda, donde le cogieron de 6 a 7 puntos de sutura. La apreciación médica también señala como una posibilidad el que la hemorragia que sufriera el niño por los oídos y por la nariz fuera el resultado de una fractura en la base del cráneo, de tal naturaleza que no podía descubrir el estudio radiográfico a que fue sometido.

"9. Luego del período de hospitalización ya mencionado el niño siguió recibiendo atención médica, principalmente de observación, por espacio de aproximadamente otra semana; durante esa semana y posteriormente el niño mostró una buena recuperación.

"10. Para la fecha del accidente Crescencio cursaba el segundo grado de escuela elemental. Debido al desgraciado suceso en que se vio envuelto, estuvo fuera de clases por espacio de tres semanas. Hasta la fecha del accidente y mientras cursaba ese segundo grado, era en la clase un estudiante despierto, muy aprovechado, que mantenía un promedio de A en sus calificaciones, y que la maestra consideraba como candidato para una beca por su eficiencia, por su buena actitud y capacidad como estudiante. Después del accidente, durante el segundo semestre de ese año escolar, el muchachito cambió su disposición y su conducta dentro del salón de clases; perdió su viveza, se mostró taciturno, algo distraído; daba muestras de no oír bien y la maestra tuvo que cambiarlo de asiento para colocarlo al frente en el salón. Su promedio de notas bajó a un promedio de B. En una ocasión sufrió un mareo en el mismo salón de clases. Sin embargo, aprovechó el grado y pasó a cursar el año siguiente el tercer grado.

"11. Luego del accidente, el niño se ha quejado con alguna frecuencia de dolor de cabeza, ha dado muestras de algún trastorno emocional vinculado al referido accidente; su recuerdo aún lo conturba y le hace llorar. (Durante la celebración del juicio el demandante tuvo que descontinuar su declaración debido a que comenzó a llorar fuertemente.)

"12. Los daños y perjuicios sufridos por el demandante, consistentes en daños físicos, dolores, sufrimientos, angustias y ansiedad mental, se estiman compensables por indemnización de dos mil dólares ($2,000.00)."

En su breve alegato los recurrentes discuten conjuntamente los tres señalamientos de error. Los hemos estudiado cuidadosamente a la luz de los hechos y circunstancias que determinó el juzgador. A juicio nuestro, ninguno fue cometido. (1) ■

En los hechos relatados por el juez de instancia no hallamos factor alguno que nos autorice a decidir que el accidente fue uno que tuviera la calidad de inevitable; es decir, que el peligro o el daño no pudo precaverse ni impedirse que sucediera. El chófer Franqui conducía por la carretera pública que conecta a Caguas con Aguas Buenas, a plena luz del día, un vehículo 'pick-up' de su patrono; se acerca a un puente estrecho de concreto, con barandas de metal; desde una distancia de 100 metros "ve y observa" que dentro de ese puente estrecho, por donde debe pasar, hay un grupo de unos ocho muchachos, de poca edad, entre los cuales se encontraba el niño demandante, de nueve años de edad, que "garateaban, se decían palabras insultantes, se empujaban de manos y estaban en movimiento continuo"; cuando se aproxima al puente la única precaución que toma es reducir la velocidad de 30 millas a una de 15 a 20 millas, como dijo el tribunal, o a una de 10 a 15 millas como sostienen los recurrentes; el puente es tan angosto que en el mismo "no caben dos automóviles que transcurran en direcciones opuestas", y por esa razón los vehículos que al mismo se aproximan se detienen para dar paso a los que ya han entrado. El vehículo no detiene su marcha; la continúa pasando "junto a los niños", que, a su vez, continúan, a pesar de la presen-

---

(1) Al terminar el estudio del presente recurso nos hemos quedado con la viva sensación de que el fallo, en el aspecto de la fijación de la cuantía de la indemnización fue, hasta cierto punto, favorable a los recurrentes, si consideramos que las serias consecuencias del accidente justificaban la concesión de la cuantía total reclamada en la demanda.

cia del vehículo, "empujándose uno al otro"; "el conductor
. . . vio cuando empujaron a Crescencio sobre su vehículo,
sintió luego un golpe leve cuando el muchachito dio contra
su camioneta, entonces desvió el vehículo hacia la derecha y
se detuvo pocos pies más adelante."

Consideramos correctas las conclusiones de derecho for-
muladas por el tribunal de instancia, entre las cuales cita-
mos las siguientes:

"3. Los hechos y circunstancias establecidos en este litigio
constituyen en derecho, base indicadora de una negligencia
atribuible al codemandado Ángel M. Franqui y que da lugar
a una obligación de indemnización con forma solidaria y man-
comunada, de la parte demandada, respecto a los daños y per-
juicios recibidos por el demandante, Crescencio Ramírez, (Arts.
1802, 1803, Código Civil, Ed. 1930—31 L.P.R.A. 5141 y 5142).

"4. La prueba del caso, conjuntamente con la ley y la juris-
prudencia aplicables, no permiten una inferencia sobre impru-
dencia y negligencia del demandante, o de terceras personas,
en relación con los daños y perjuicios sufridos por él.

"En este caso, el Tribunal aprecia una situación de donde
considera que el conductor estaba obligado a ejercer una pre-
caución y diligencia mayor y superior a la que en efecto ejerció.
La actividad juvenil que pudo distinguir y apreciar con sufi-
ciente anticipación en el lugar de los hechos señalaba un claro
peligro potencial, que requería la adopción de medidas más
rigurosas en protección y garantía de la seguridad de estos
muchachos que se agitaban dentro del reducido marco de un
estrecho puente por donde necesariamente tenía que transcurrir
el vehículo conducido por el señor Franqui, a muy poca dis-
tancia del grupo de los niños en juego. Entiende el Tribunal
que el conductor estaba obligado a avanzar por el lado de los
niños a la mínima velocidad que permitiera el motor del
vehículo, o a una mucho más reducida de aquella que utilizó en
ese lugar. El Tribunal infiere que fue precisamente el impulso
de la velocidad del vehículo conducido por el señor Franqui, las
15 o 20 millas informadas, lo que produjo la fuerza que lanzó
al niño perjudicado sobre la baranda de metal del puente con
los resultados apuntados. Adicionalmente el conductor estaba
obligado a una más cabal observación mientras discurría tan
próximo a los muchachos. De haberse ejercido estas precaucio-

nes adicionales el accidente en sí o las consecuencias graves del mismo se habrían evitado. El Tribunal ve en la velocidad utilizada por el señor Franqui dentro de las circunstancias descritas, la causa próxima e inmediata de los daños y perjuicios sufridos por el demandante."

En su fallo el tribunal recurrido citó el Artículo 17(a) de la ley de tránsito tal como regía a la fecha del accidente, y nuestras decisiones en *Alvarez* v. *Hernández*, 74 D.P.R. 493 (1953), *Díaz* v. *Stuckert Motor Company*, 74 D.P.R. 519 (1953), *Irizarry* v. *Pueblo*, 75 D.P.R. 786 (1954) y *Castro* v. *González*, 58 D.P.R. 369 (1941).

Sostienen los recurrentes que esos casos fueron decididos a base de situaciones de hecho distintas a la del presente caso y que en *Quiñones* v. *Hernández*, 83 D.P.R. 212 (1961), limitamos la aplicación de la doctrina del caso de *Alvarez*, supra, a "situaciones de hechos extremos y poco usuales".

El citado Artículo 17(a) contiene la norma general que impone el deber de ejercer "en todo tiempo" el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades, a las personas que manejen vehículos en los caminos públicos. La violación de este precepto por el chófer aquí resulta evidente. Continuar la marcha por aquel estrecho puente ocupado por niños en movimiento continuo, no era una medida de cuidado, ni una precaución razonable, sino una imprudente y peligrosa para esos niños. ▇

Este caso no es uno en que la persona lesionada ha estado ocupando previamente un sitio de seguridad e, inesperadamente, lo abandona y se lanza frente a un vehículo en movimiento, situación que ha estado presente en los casos comentados en los alegatos y en la mayoría de los que citó el juzgador. Aquí el grupo de niños—no mayores de nueve años—se encuentra en el preciso vórtice del peligro; situados dentro de las barandillas de metal del estrecho puente, por cuyas dos salidas podrían escapar, jugando y empujándose despreocupadamente y olvidando todo lo que no fuera

el juego y los compañeros, quedándoles, al entrar el chófer con su vehículo al puente, sólo una salida para huir del sitio defendiéndose de cualquier peligro que se les presentara. ■

En el caso de *Alvarez*, a la página 499 del tomo 74, en que la situación no estaba tan llena de peligros, ni había tan escasos medios de defensa, dijimos:

"La conducta y los movimientos de los niños en la acera conllevaban una situación potencialmente peligrosa. Ellos no estaban estacionados fijamente en la acera ni estaban bajo la custodia y protección de una persona adulta. Estaban jugando, corriendo y empujándose mutuamente. Ello daba lugar a que el conductor del vehículo pudiese anticipar razonablemente que uno de los niños se lanzase a la calle, como una consecuencia del juego infantil. Existía la probabilidad razonable de que uno de los niños dejase la acera y fuese a la calle. La conducta de los niños daba lugar a ese riesgo y el conductor del vehículo venía obligado, razonablemente, a anticipar el que esa situación inherentemente peligrosa se pudiese materializar a través de algún movimiento súbito de un niño con dirección a la calle. La negligencia es función de riesgos y surge del incumplimiento del deber de actuar con cuidado ante una situación peligrosa. Si determinada conducta peligrosa es anticipable, ello da lugar al deber de actuar con cuidado. La doctrina del accidente inevitable requiere, en su aplicación a casos como el de autos, el que la conducta de la víctima sea inesperada. Si esa conducta era razonablemente anticipable y el conductor del vehículo ha tenido la oportunidad de controlar y conducir el automóvil en tal forma que el accidente se hubiera podido evitar, ello es origen de responsabilidad."

No erró el juzgador al tomar en cuenta esa doctrina y al aplicarla, en lo posible, al caso que falló. No dudamos que la situación presente en aquel puente estrecho al acercarse al mismo el chófer, constituía "una situación de hechos extremos y poco usuales", a los fines del tránsito público en aquel sitio a que aludimos en el caso de *Quiñones* v. *Hernández*, supra.

Aun en el supuesto caso de haber aplicado incorrecta-

mente el juzgador esas decisiones, hubiéramos sostenido su fallo a la luz de las circunstancias concurrentes y lo dispuesto en los Arts. 1802 y 1803 del Código Civil.

*Deberá confirmarse la sentencia por todo lo expuesto.*