JOSÉ BERRÍOS por sí y como representante de la SOCIEDAD DE GANANCIALES compuesta por él y su esposa LUCILA RAMONA GARCÍA DE BERRÍOS y como padre con patria potestad del menor RAYMOND BERRÍOS GARCÍA, demandantes y recurridos, *v.* LAUNDRY SAVARONA, INC. y NATIONWIDE INSURANCE COMPANY, demandadas y recurrentes.

Número: R-74-278 Resuelto: 10 de octubre de 1975

*José A. Rivera Mercado,* abogado de la demandada recurrente Nationwide Insurance Company; *Ernesto González Piñero, Jesús M. Rivera Albino* y *Pablo Lugo Pagán,* abogados de los recurridos.

### SENTENCIA

La Sala de Caguas del Tribunal Superior hizo las determinaciones de hecho que relacionamos a continuación en una acción de daños instada por unos padres en relación con un accidente sufrido por su hijito menor de edad.

El tribunal de instancia concluyó que en enero de 1970 un chofer empleado del Laundry Savarona estacionó una camioneta de reparto y recolección de ropa frente a la residencia de los demandantes con el propósito de entregar una ropa. Dicho chofer se desmontó de la camioneta y cruzó la marquesina de la casa hasta llegar a la puerta lateral, donde entregó la ropa a la madre del menor en cuestión según era su costumbre. Al lado de la madre se encontraba su hijo menor, de aproximadamente dos años y medio de edad, a quien el chofer le acarició la cabeza mientras la madre firmaba el recibo. La madre declaró que entró hacia su habitación con la ropa que el chofer le entregó, que el nene iba con ella pero que al mirar ya el nene no estaba. T.E. pág. 12. El chofer regresó al vehículo atravesando nuevamente la marquesina en dirección a la camioneta, pasó por detrás de ésta y se montó por el lado izquierdo. Su propósito era trasladarse a efectuar otra entrega dos casas más adelante. Dio marcha al frente al vehículo y cuando apenas había recorrido dos pies sintió un leve golpe y se detuvo. Por el espejo retrovisor lateral izquierdo pudo ver al niño tendido en el pavimento. Sorprendido y sumamente perturbado, se desmontó y recogió al niño de la calle. (¹)

La madre describió el momento del accidente en la forma siguiente: "Cuando estoy en mi cuarto, que no veo al nene, que oigo unos gritos, salí a buscar al nene; pensé que el nene estaba *detrás* de la guagua; cuando oigo los gritos de este señor, que el gritaba histéricamente . . . con las manos en la cabeza . . . 'Dios mío, Dios mío, yo no lo ví, yo juro que no lo ví' . . ." (Énfasis suplido). Nos impresiona el relato de la madre por dos razones. Primero, por su velada insinuación de que su hijo podía estar *detrás* de la guagua, no de-

---

(¹) El menor sufrió una fractura en la clavícula izquierda y dislocación del codo izquierdo y varias contusiones en el resto del cuerpo. Al momento del juicio el niño se encontraba clínicamente curado—los exámenes no revelaban lesión alguna neurológica o encefalográfica.

lante, ni al lado. ¿Cómo podría imaginarse ésta que su hijo podía estar precisamente detrás de la guagua y no al frente? ¿No es más probable pensar que la expresión llevaba la intención de situar al niño precisamente donde ocurrió el accidente? Del expediente no surge si el golpe sentido por el chofer fue contra el vehículo o contra el pavimento. Si contra el vehículo, presumimos que el niño tropezó corriendo hacia la guagua. Si contra el pavimento, es de esperarse que el niño estuviese agarrado al vehículo habiéndose soltado o resbalado.

Nadie vio el accidente, por lo que no se sabe exactamente cómo ocurrió el impacto, y no hubo evidencia alguna con respecto a los movimientos del niño desde que el chofer abandona la puerta de la casa hasta la ocurrencia del desgraciado accidente. El juez recurrido, sin embargo, hizo las siguientes expresiones que revelan más bien unas conjeturas:

"Ella [la madre], *aparentemente* entró dentro del cuarto a colocar la ropa, luego de haber firmado el recibo de entrega. El ... [chofer], salió por la marquesina, pasó por la parte de atrás de la guagua sin percatarse, *aparentemente,* que el niño le había seguido de cerca y estaba peligrosamente cerca de la guagua, *aparentemente,* por el lado izquierdo de la misma." (Énfasis suplido.)

. . . . . . . .

"Como se ve, por la secuencia de los actos narrados por el propio ... [chofer] no discurre lapso apreciable de tiempo entre regresar a la guagua y el accidente. ¿Cómo es posible que habiendo la guagua recorrido solo dos pies, pudiendo ver como vio al niño tendido por el espejo lateral delantero izquierdo, no lo viera por el mismo espejo al niño en el sitio del impacto, al prender el motor en el preciso momento antes de echar a andar la guagua? ... [s]i lo vio por ese espejo, es claramente y casi forzosamente inferible que el niño estaba a la vista del ... [chofer], a través del espejo, cuando entró y prendió y echó a andar la guagua."

Un examen de la prueba revela que el menor había demostrado con anterioridad al accidente síntomas de un síndrome

cerebral, de origen genético, cuya condición denomina el tribunal de instancia como "hiperkinetismo", o sea, exceso de actividad, la cual se manifiesta con "una marcada tendencia a trasponer todo lo que encontraba a su paso, . . . [destruyendo] todo lo que caía en sus manos, y una anormal inquietud . . . . De modo que debido a esa marcada inquietud física . . . la madre sabía que era peligroso dejarle solo." Añade el juez recurrido que la madre había admitido que no sabía cómo ni cuándo salió el niño de su lado: Por ello le imputó el 50% de la negligencia a la madre y el 50% al chofer.

No podemos estar de acuerdo con la inferencia que hace el tribunal a quo en el sentido de que de esos mismos hechos se desprende que el empleado miró hacia atrás descuidadamente y que por tanto actuó con negligencia. Tampoco podemos seguir la lógica de la expresión en el sentido de que si el chofer miró, debió haber visto. Sabemos que al mirar por el espejo retrovisor no se ve aquello que el vehículo tapa. El grado de cuidado exigido es mayor cuando el chofer se propone dar marcha atrás al vehículo, situación que no se da en el presente caso. Considerando la condición hiperactiva del menor podemos inferir que éste pudo haber corrido súbitamente desde la puerta de la casa hasta colocarse en las cercanías de la parte trasera de la camioneta y quizás agarrarse del vehículo mientras el chofer se montaba y encendía el motor, lo que evidentemente pudo haber causado el inexplicable y desgraciado accidente, quizás al tropezar o al deslizarse dicho menor de la camioneta en movimiento. El tribunal asume erróneamente que el chofer pudo haber razonablemente anticipado la actuación del niño. Nos es imposible concurrir. Véanse *Rodríguez Ramírez* v. *Franqui Viera,* 86 D.P.R. 766, 773 (1962) ; *Alvarez* v. *Hernández,* 74 D.P.R. 493, 499 (1953). ¿Cómo es posible que el chofer hubiese podido razonablemente anticipar que el niño pudiese correr hasta situarse cerca de la parte trasera del vehículo, cuando él dejó al niño dentro de la casa en compañía de la madre? (La misma madre admite que

creía que el niño estaba con ella.) No se trata aquí de una situación potencialmente peligrosa, como cuando hay niños jugando en la calle, o en la acera cerca del vehículo, *Alvarez*, supra, pág. 499. Por el contrario, la conducta de la víctima fue completamente inesperada e imposible de ser razonablemente anticipada o prevista por el chofer. *Cf. Alvarez*, supra, pág. 500; *Rodríguez Ramírez*, supra, pág. 772. De haber mediado negligencia en las peculiares circunstancias aquí presentes, la misma es en todo caso atribuíble a la madre del menor.

En vista de que resulta contrario a derecho imponer responsabilidad a quien no la tiene, debe exonerarse a la demandada recurrente. Se revoca la sentencia recurrida y se declara sin lugar la demanda.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Presidente, Señor Trías Monge, disintió con opinión.

(Fdo.) Angel G. Hermida
*Secretario*

—0—

Opinión disidente emitida por el Juez Presidente, Señor Trías Monge.

San Juan, Puerto Rico, a 10 de octubre de 1975

Disiento de la revocación de la sentencia en este caso. He examinado el récord y estimo que no se desprende de él con la necesaria nitidez y contundencia que se hayan cometido los alegados errores en la apreciación de la prueba. En la revisión de las determinaciones de hecho de otro tribunal, el Tribunal Supremo no debe sustituir su criterio por el del juez sentenciador ni intervenir con la apreciación de la prueba en ausencia de error manifiesto. *C. Brewer P.R. Inc.* v. *Rodríguez*, 100 D.P.R. 826 (1972); *Pueblo* v. *López Rivera*, 102

D.P.R. 359 (1974); *Pueblo* v. *Colón Obregón*, 102 D.P.R. 369 (1974). No puede decirse, a mi juicio, en este caso que las conclusiones de hecho del tribunal de instancia están huérfanas de apoyo en el récord. Dichas conclusiones representan un balance racional y justiciero de la totalidad de la evidencia recibida. *Maryland Casualty Co.* v. *Quick Const. Corp.*, 90 D.P.R. 329 (1964). Nuestra función revisadora no debe trasponer esa frontera.