ANTONIO AYALA LÓPEZ, demandante y apelante, *v.* FÉLIX MATÍAS, demandado y apelado.

Núm. 7618.—*Sometido:* Diciembre 16, 1938. *Resuelto:* Febrero 21, 1939.

*Gelpí & Gelpí,* abogados del apelante; *Oscar Souffront,* abogado del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Antonio Ayala López instituyó este pleito en reclamación de los daños y perjuicios que alega haber sufrido al ser arrollado por el automóvil que guiaba el demandado, el 4 de junio de 1935, por la carretera que de Cabo Rojo conduce a Mayagüez. Alega en su demanda que el demandado Félix Matías, en los momentos del accidente, manejaba su automóvil de manera negligente y descuidada, a excesiva velocidad, sin tener en cuenta el ancho y tránsito del camino, siendo un sitio poblado, marchando por su izquierda y sin dar aviso al acercarse al demandante. Que la causa próxima del accidente sufrido por el demandante fué la negligencia del demandado antes descrita, que ha sufrido los daños personales, dolores físicos y sufrimientos y angustias mentales que describe en la demanda, y concluye con súplica de una sentencia que condene al demandado a pagarle la cantidad de $5,000 más costas y honorarios de abogado.

Contestó el demandado negando específicamente las alegaciones esenciales de la demanda jurada y en oposición a la misma en síntesis alegó que tanto el demandante como el demandado marchaban por su derecha en la misma dirección, llevando el demandado una velocidad moderada como de doce millas por hora; que desde mucho tiempo antes del demandado acercarse al demandante, tocó *klaxon* y siguió tocándolo repetidas veces, pero observando que el demandante no miraba hacia atrás, redujo la marcha de su automóvil cuando estaba como a diez yardas de distancia del demandante, tocando el *klaxon* más fuertemente; que en ese momento el demandante trató de cruzar la carretera en dirección a su casa, ubicada a la izquierda de la misma, pero cuando ya había llegado al centro de la carretera, retrocedió, haciendo zigzags, en forma tal que vino a colocarse delante del automóvil, sin que el demandado pudiese evitar chocar con él y derribarlo; que el carro quedó parado en el mismo sitio en que chocara,

sin haber arrollado al demandante, pues ya el demandado había logrado detener toda la marcha del vehículo. Alega también el demandado que la única causa del accidente fué la negligencia del propio demandante al abandonar el sitio seguro donde se hallaba para atravesar la carretera en dirección a su casa, sin prestar atención a los avisos del demandado, sin observar a ambos lados de la carretera en el momento en que se disponía a cruzarla, siendo aquélla una carretera de mucho tránsito, y sin que existiera allí ninguna calle ni camino que cruzase la carretera transversalmente, por lo que el demandado tenía su vía expedita. Niega los daños que alega haber sufrido el demandante, y como defensa especial reproduce lo que anteriormente había alegado en oposición a las alegaciones de la demanda.

Celebrado el juicio en septiembre de 1936 y luego de oír la prueba de ambas partes y llevar a cabo una inspección ocular, la corte inferior dictó sentencia desestimando la demanda, sin especial condenación de costas. Contra esta sentencia se interpuso el presente recurso de apelación, en apoyo del cual el apelante, en el alegato que radicó el 29 de septiembre de 1937, imputa a la corte sentenciadora un solo error, a saber:

"La Corte de Distrito de Mayagüez erró en la apreciación de la prueba al no creer la del demandante, demostrando tener pasión, prejuicio y parcialidad y cometiendo manifiesto error de apreciación al creer la prueba del demandado, la cual era increíble debido a que los hechos que se declararon probados en la relación del caso y opinión es imposible que sucedan de la manera en que los da la corte por probados."

La prueba es, en efecto, claramente contradictoria. La del demandante consistió en su declaración y en las de los testigos Emilio Carbonell, Ramón Silvestry, Fernando Ayala, y la del Dr. Lassisse, que se contrajo a describir las lesiones sufridas por el demandante.

Cada uno de ellos describe el accidente en la siguiente forma:

*Declaración de Antonio Ayala López:* Venía de Cabo Rojo para su casa, que queda a la izquierda con dirección a Mayagüez. Caminaba a pie por su izquierda, cuando súbitamente sintió un fuerte ruido detrás de él, y al volverse, fué arrollado por el automóvil. No oyó *klaxon* ni bocina, venía mirando hacia adelante y en ningún momento miró hacia atrás. Su casa está en la orilla de la carretera, aunque no llega hasta la brea. No hay cuneta por el lado del camino donde está su casa. Al ser arrollado por el automóvil, venía andando por la orilla de la carretera fuera de la brea. No puede especificar qué parte del automóvil le dió, sólo puede asegurar que fué con la parte delantera.

*Declaración de Emilio Carbonell:* Es vecino de Cabo Rojo y conoce al demandante y al demandado. El 4 de junio de 1935 caminaba por la indicada carretera, por su derecha, en dirección a Mayagüez, y se dirigía a su casa, que radica en dicha carretera, cerca del sitio del accidente. Que como entre 3 y 3:30 de la tarde, vió que el automóvil del demandado venía por su derecha en la misma dirección, a mucha velocidad, lo que le obligó a tirarse a la cuneta para evitar ser arrollado. Siguió el testigo su marcha y observó, junto a la casa del demandante, una piedra ensangrentada. Le informaron que allí fué donde el automóvil del demandado había arrollado al demandante, comentando entonces el testigo que también iba a ser él víctima de dicho automóvil, y que para evitarlo tuvo que tirarse a la cuneta. Anteriormente había visto al demandante caminando por la izquierda, bien a la izquierda, por el paseo, llevando una bolsa en la mano, pero luego lo perdió de vista. Cuando llegó al sitio del accidente ya se habían llevado el herido y observó que el carro del demandado tenía una goma rota. Aquella tarde no llovía fuerte, pero estaba lloviznando.

*Declaración de Ramón Silvestry:* Es también vecino de Cabo Rojo y conoce al demandante y al demandado. Vió a éste guiando un automóvil en la carretera de Cabo Rojo a

Mayagüez, como entre 3 : 00 y 3 : 30 de la tarde. Venían tres señores más en el carro. De ellos conoce a Juan Ramírez y a Matías Graniela. Vió también al demandante que venía con unos líos en la mano, como a treinta metros del demandado, en dirección de Cabo Rojo a Mayagüez. En esos momentos, declara el testigo, ''venía ese señor, Félix Matías, venía guiando el carro, como dando zigzags, y este señor (señalando al demandante) venía por la izquierda; y al pasar este señor con el carro por el frente mío, yo quedé detrás del automóvil y a este señor le faltaban como dos pies para entrar para la casa, que hay allí una piedra grande, cuando le dió por detrás y lo tiró, quedando este señor debajo del carro, quedando la cabeza para allá y las piernas para Mayagüez.'' (T. de E., pág. 23.) El carro venía como a cincuenta kilómetros por hora y en esos momentos llovía. No oyó que el demandado tocase bocina u otro aparato de alarma, pero observó que venía haciendo zigzags de izquierda a derecha. La goma explotó antes de chocar con la piedra. El testigo oyó la explosión. El automóvil se desvió hacia la izquierda y no pudo tomar la derecha. El testigo también se echó a la cuneta. El demandado parece que venía distraído, hablando con don Juan Ramírez, mirando ocasionalmente para donde se hallaba don Juan, mientras hablaba con él. Un hijo del demandante lo sacó de debajo del carro. El sitio del accidente es un poblado y hay por allí mucho tránsito.

Ni el testigo ni Carbonell declararon en la corte municipal en relación con el accidente.

*Declaración de Fernando Ayala:* Este testigo se hallaba en su casa, que es la misma de su padre el demandante, al oír un ruido salió y vió a su padre arrollado por un carro. Procedió a sacarlo de debajo del automóvil auxiliado por el guardia Padilla.

Tal es la prueba del demandante en relación con la forma en que ocurriera el accidente. Los testigos Carbonell y Fernández Ayala no lo presenciaron. El demandante sólo pudo

decirnos que venía por su izquierda, que oyó un ruido detrás de él y que al volverse fué arrollado por el automóvil, no habiendo oído antes *klaxon,* bocina u otro aparato de alarma.

Veamos ahora en qué consistió la prueba del demandado.

*Declaración de Juan Ramírez:* El día del accidente estaba lloviendo. El testigo vió al demandante a una distancia de seis a siete yardas. Caminaba por su derecha. El automóvil venía como a dos yardas de distancia de la cuneta. El abogado del demandante lo sometió al siguiente contrainterrogatorio:

"P. ¿En qué momento fué que usted observó que el Sr. Antonio Ayala López se desviaba, cuando estaba a seis o siete yardas lo vió, antes que doblase para cruzarla?

"R. Yo lo ví momentos antes de cruzar la carretera.

"P. ¿Pero momentos antes, segundos o minutos?

"R. Pues más o menos antes, nosotros veníamos por la carretera y el cruzó.

"P. ¿Él venía andando o corriendo?

"R. No, venía andando.

"P. Y el carro, al enfrentarse con Antonio Ayala, ¿qué hizo?

"R. Pues él le metió los frenos, y cuando iba, como estaba resbaladiza la carretera, pasó.

"P. ¿Dónde fué a parar el carro?

"R. El carro quedó parado en el firme de la carretera.

"P. ¿Es verdad o no es verdad que él chocó con una piedra y que se le explotó una goma?

"R. Que yo sepa, no." (T. de E., pág. 41.)

Según este testigo, el demandante se confundió y "se le vino encima al carro." Oyó que el demandado tocó *klaxon.* En el curso de su declaración dijo que el herido fué llevado al hospital en el carro del demandado, pero más tarde rectificó y declaró que le parecía que lo llevaron en otro automóvil.

*Declaración de Matías Graniela:* Viajaba en el automóvil del demandado, el cual marchaba a doce o quince kilómetros por hora, a poca velocidad. El accidente ocurrió como a dos o tres yardas del margen izquierdo de la carretera. Vió al

demandante como a diez o doce metros de distancia caminando por la derecha. Cruzó entonces hacia la izquierda, llegando a caminar dos o tres pasos en esa dirección, y al sentir el *klaxon* "se vino encima del carro."

*Declaración de Francisco Hernández:* Antonio Ayala venía por la carretera, bajando la cuesta, y Félix Matías, el demandado, venía también. El demandado tocó el *klaxon* y el demandante cruzó la carretera hacia la izquierda. El demandado hizo todos los esfuerzos posibles por evitar el accidente. Ayala cayó frente al automóvil, como a dos o tres metros de su casa. Al automóvil se le reventó la goma izquierda delantera. No vió la piedra. Venía sentado en el asiento delantero, junto al demandado, que es su cuñado. Cuando el automóvil se hallaba como a dos o tres yardas del demandante, fué que éste cruzó y siguió caminando hacia la izquierda en dirección al automóvil.

*Declaración del demandado Félix Matías:* El día a que se refiere el caso viajaba con unos amigos "empleados de la misma hacienda donde yo trabajo, y al pasar por frente al hospital de Cabo Rojo ví al Sr. Antonio Ayala y al momento cruzó, y yo hice todo lo posible por evitar el accidente, pegué los frenos y tenía una goma floja y con el movimiento de los frenos la goma explotó, y cogió a Antonio Ayala y quedó frente a la casa." El demandado y el demandante venían por la derecha. El demandado viajaba a quince o veinte kilómetros por hora y hace más de cuatro o cinco años que guía automóvil. El Ford del demandado es del año 1930. La goma explotó en cuanto aplicó los frenos. Vió a Ayala por primera vez como a seis u ocho yardas y tocó *klaxon* para prevenirlo. Cuando trató de cruzar estaba cerca del carro. El demandado luchó por evitar el accidente, pero Ayala seguía en dirección al carro que venía con una goma explotada y lo cogió. El automóvil se detuvo con la piedra grande al lado izquierdo de la carretera, frente a la casa de Ayala. Conoció que Ayala iba a cruzar, y tocó *klaxon* pero

él siguió y el testigo trató de defenderlo echando hacia la izquierda. El carro no hizo ningún zigzag.

Refiriéndose a la atención que prestó al demandante, declaró: "Se le puso una inyección y el practicante me dijo que no podía atenderlo, y me lo traje a Mayagüez y no había un médico que lo atendiera, y recurrí al Dr. Lassisse, y me pedían $25 y quedamos en $20, y se utilizó al practicante, y entonces estuvo en el hospital catorce días y yo siempre lo iba a ver, un día sí y otro no, y le llevaba algo; a veces venía de trabajar y lo iba a ver."

Tal fué la prueba del demandado, a la cual dió crédito el juez sentenciador.

La inspección ocular no arroja gran luz en el asunto, pero es indudable que la prueba del demandante es muy débil, si se tiene en cuenta que su primer testigo, Carbonell, aunque declaró que el demandado venía a una gran velocidad, sin embargo, contrario a la versión del demandante, declaró también que venía por su derecha, tan cerca del margen de la carretera que tuvo que tirarse a la cuneta para no ser arrollado. El otro testigo, Silvestry, por el contrario, declaró que el demandado venía dando zigzags y en uno de ellos se echó tanto a la izquierda que el testigo tuvo también que echarse a la cuneta, conforme dijo Carbonell que había hecho, para evitar ser arrollado por el automóvil del demandado. Es de notar que según la declaración del propio demandante no existe cuneta alguna en ese sitio al lado izquierdo de la carretera, yendo de Cabo Rojo para Mayagüez, y rara coincidencia es que uno y otro testigos, en distintos momentos y sitios, hubiesen estado expuestos al mismo peligro, uno caminando por la derecha y el otro caminando por la izquierda de la carretera. El demandante no pudo dar luz alguna en este asunto, porque según declaró se dió cuenta de la proximidad del automóvil en el momento de ser arrollado por éste.

La prueba del demandado es más fuerte y más lógica que la del demandante. Claro es que no damos crédito a aquella

parte de la misma que afirma que el automóvil del demandado marchaba a una velocidad de doce a quince kilómetros, porque es ésta una velocidad tan mínima que solamente se acostumbra en casos excepcionales, y en este caso no aparece de la evidencia que existiera razón alguna para que el automóvil del demandado marchase a tan pequeña velocidad.

La versión de algunos de los testigos del demandado es la que nos parece la más lógica: El demandante y el demandado marchaban por el margen derecho de la carretera, yendo de Cabo Rojo para Mayagüez. Al aproximarse el automóvil del demandado al demandante, éste tornó súbitamente hacia la izquierda con el fin de entrar a su casa. Cuando solamente había caminado dos pasos, el demandado tocó *klaxon.* Se confundió el demandante y en vez de permanecer en el sitio en que se hallaba, hizo lo que frecuentemente sucede, es decir, se confundió y trató de cruzar la carretera antes de que pudiese ser alcanzado por el automóvil. El demandado trató de desviar su carro para evitar arrollar al demandante, y en esa forma uno y otro fueron a parar al margen izquierdo de la carretera, donde finalmente ocurrió el accidente.

A nuestro juicio el juez de la corte inferior no cometió error en la apreciación de la prueba y dirimió el conflicto correctamente, sin que sea aplicable a este caso la doctrina de *last clear chance,* puesto que en ningún momento tuvo oportunidad el demandado de evitar el accidente, ya que éste ocurrió súbitamente al tratar el demandante de cruzar la carretera cuando ya estaba tan cerca del automóvil del demandado que era difícil para éste evitarlo.

*Procede, por consiguiente, confirmar la sentencia apelada, modificándola sin embargo en cuanto al pronunciamiento de costas, que deben concederse al demandado de acuerdo con la ley que imperaba al tiempo de dictarse la sentencia, dispositiva de que las costas deben concederse a la parte victoriosa.*

El Juez Presidente Sr. Del Toro no intervino.