ÁUREO DÍAZ CRUZ y DOLORES MIRANDA TORRES, demandantes, apelados y apelantes, *v.* STUCKERT MOTOR COMPANY e INDEMNITY INSURANCE COMPANY, demandadas, apelantes y y apeladas.

Número 10680.

*Sometido:* 21 de noviembre de 1952. *Resuelto:* 31 de marzo de 1953.

*Juan Enrique Géigel, Guillermo Silva* y *Hernán G. Pesquera,* abogados de las apelantes y apeladas; *Frank Torres,* abogado de los apelados y apelantes.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del tribunal.

Alrededor de las siete de la tarde del día primero de junio de 1950 y en las inmediaciones del kilómetro 97 de la carretera insular número 1 que conduce del pueblo de Coamo al de Aibonito, un automóvil marca Studebaker, propiedad de la Stuckert Motor Co., arrolló al menor Julio Enrique Díaz Miranda, ocasionándole varias lesiones a consecuencia de las cuales falleció horas después. Sus padres legítimos, Áureo Díaz Cruz y Dolores Miranda, interpusieron demanda ante la Sección de Ponce del anterior Tribunal de Distrito de Puerto Rico, contra la Stuckert Motor Co. y su aseguradora Indemnity Insurance Co., reclamando daños y perjuicios por la muerte de su referido hijo.

En la demanda se alegó que el accidente se debió única y exclusivamente a la culpa y negligencia del conductor del vehículo que arrolló al menor. En cuanto a la negligencia de la dueña de dicho vehículo se alegó "Que la culpa y negligencia de dicha demandada, sus sirvientes, agentes o mandatarios,

se debió, entre otras causas, a los siguientes motivos:" (*a*) conducir el automóvil a velocidad exagerada y excesiva; (*b*) no llevar encendidas las luces del vehículo; (*c*) no tocar *claxon* o bocina, (*d*) no tomar en consideración el ancho de la carretera en el sitio del accidente, y (*e*) conducir el vehículo en forma atolondrada y temeraria.

Las demandadas contestaron aceptando algunos hechos y negando otros. Además levantaron varias defensas afirmativas, entre ellas, las de (1) que el accidente fué causado por la única y exclusiva negligencia del menor Julio Enrique Díaz Miranda, quien descuidada y negligentemente se lanzó a cruzar la carretera de derecha a izquierda, (2) que la negligencia contribuyente de dicho menor fué la causa próxima del accidente, y (3) que de no haber mediado negligencia exclusiva o contribuyente del menor, el accidente fué uno desgraciado y fortuito.

Celebrado el juicio en los méritos, el tribunal a quo dictó sentencia condenando a las demandadas a pagar a los demandantes la suma de $3,100 en concepto de daños y perjuicios, más las costas y $300 para honorarios de abogado.

Ambas partes han apelado de dicha sentencia. Los demandantes se limitan a impugnar la cuantía concedida como indemnización, por considerarla muy baja. Por su parte las demandadas imputan al tribunal sentenciador la comisión de los siguientes errores:

"1. El tribunal sentenciador incurrió en manifiesto error de derecho al concluir, no obstante los hechos que declaró probados, que el accidente que causó la muerte del menor Julio Enrique Díaz Miranda se debió a la negligencia, falta de circunspección y forma atolondrada en que el empleado de Stuckert Motor Company conducía el vehículo propiedad de dicha empresa.

"2. El tribunal sentenciador cometió error al no concluir que el accidente fué causado por la única y exclusiva negligencia del menor, Julio Enrique Díaz Miranda, o que, por lo menos, fué causado por la negligencia contributoria de dicho menor.

"3. El tribunal inferior cometió error de derecho al aplicar al caso la doctrina de la última oportunidad (*last clear chance*),

a pesar de haber concluído que el menor Julio Enrique Díaz Miranda no incurrió en negligencia contributoria.

"4. El tribunal sentenciador cometió error de derecho al aplicar la doctrina de la última oportunidad (*last clear chance*), a pesar de no haber sido alegada la misma en la demanda ni haber sido invocada por la parte demandante.

"5. El tribunal inferior incurrió en error de derecho al concluir que el conductor del vehículo tuvo la última oportunidad para evitar el accidente."

Pasamos a considerar, en primer lugar, el recurso de las demandadas. Para ello es conveniente exponer aquí aquellas conclusiones del tribunal a quo pertinentes a los puntos en discusión. En cuanto a la forma como ocurrió el accidente, dicho tribunal formuló las siguientes conclusiones de hechos:

"Que el accidente ocurrió alrededor de las siete de la tarde del día 1ro. de junio de 1950 en las inmediaciones del kilómetro 97 de la carretera insular número 1 que de Coamo conduce al pueblo de Aibonito;

"Que en el momento en que ocurrió el mencionado accidente José Euclides Torres Rodríguez conducía el vehículo en gestiones de negocios de su patrono Stuckert Motor Co.;

"Que el automóvil corría por su derecha a una velocidad de treinta a cuarenta millas por hora y no tenía las luces encendidas;

"Que después de ocurrir el impacto el conductor del vehículo aplicó los frenos dejando marcadas las huellas de las gomas claramente en la carretera, las que describieron un semicírculo de derecha a izquierda, yendo a terminar cerca de una barranca al lado izquierdo de la carretera;

"Que de acuerdo con las medidas tomadas, las huellas cubrieron una distancia de setenta y seis pies desde donde se inician hasta donde terminan;

"Que de acuerdo con la tabla que aparece en la obra Blashfield *Cyc. of Automobile Law & Practice*, Vol. 9, página 706, un vehículo que corre a una velocidad de treinta millas por hora, necesita recorrer una distancia de setenta y tres pies desde que se aplican los frenos hasta el momento en que el vehículo queda totalmente detenido;

"Que el automóvil era un vehículo completamente nuevo, sus frenos estaban en buenas condiciones y habían trabajado bien antes del accidente y así también lo hicieron después del mismo;

"Que el accidente se debió a la negligencia, falta de circunspección y forma atolondrada en que era conducido el vehículo por José Euclides Torres Rodríguez;

"Que por la prueba testifical y documental (*Exhibit* fotográfico de los demandados) se demuestra que la arboleda y maleza para el lado de la carretera donde ocurrió el accidente no está contigua a la carretera y sí después de pasar la zanja que estaba cubierta por un murito o puentecito, sitio de donde salió el menor, lo que hace que la visibilidad del conductor del vehículo fuera aún mayor.

"Que de dar crédito al testimonio de la parte demandada, en el momento del accidente el automóvil corría a una velocidad de más o menos treinta o cuarenta millas por hora, y a una distancia de doce pies más o menos del borde del murito o puentecito por donde salió el menor;

"Que considerada la velocidad a que corría el vehículo, la distancia que se alega a que corría el automóvil del borde de la carretera, la visibilidad en el sitio, y la falta de obstáculos en el resto de la carretera, bien pudo el conductor del vehículo desviar libremente a su izquierda y evitar el arrollar al niño;

"Que en la izquierda de la carretera no había obstáculos, ni venía ningún automóvil en dirección contraria, siendo la carretera completamente recta;

"Que a los fines de considerar la oportunidad que el conductor del vehículo tuvo de ver al niño y tomar las precauciones debidas, no sólo debe considerarse la distancia por donde discurría el automóvil al borde de la carretera sino también el ancho del murito o puentecito sobre la zanja ya que la maleza y arboleda no están al borde de la carretera sino después de la zanja;

"Que el menor caminaba a paso ligero, pero no corría y era de ocho años de edad;"

Dicho tribunal concluyó además que la negligencia del conductor del vehículo había consistido en no desviar el mismo oportunamente hacia la izquierda para evitar el accidente. En sus conclusiones de derecho, sobre este punto, se expresa así el tribunal sentenciador:

"Este caso se distingue del de *García* v. *Figueroa & Gautier*, 52 D.P.R. 897, en que la visibilidad del conductor en aquel caso se encontraba obstruída por el automóvil que estaba estacionado, mientras que en el que hoy nos ocupa, toda la prueba de-

muestra que no había obstáculos que impidieran al conductor del vehículo ver al menor Julio Enrique Díaz Miranda al salir del callejón al murito o puentecito y de allí a la carretera.

"No sólo considera el tribunal para resolver este caso la oportunidad que tuvo el conductor de ver al menor, aceptando como cierto que el vehículo viajara a una distancia de doce pies del borde de la carretera, el ancho del murito, además de las condidiciones topográficas por estar los árboles y maleza fuera del borde de la carretera, sino también la oportunidad que con motivo de todas estas circunstancias tuvo el conductor del vehículo de desviar su automóvil hacia la izquierda y no arrollar al menor.

"  .    .    .    .    .    .    .    .    .    .    .    .

"En este caso la velocidad a que marchaba el vehículo, que era normal de acuerdo con la ley, requería setenta y tres pies para detenerlo de ser a treinta millas por hora en marcha, o de ciento quince pies de ser su marcha a cuarenta millas por hora, pero todas las circunstancias demuestran que el conductor del vehículo pudo haber desviado hacia la izquierda antes de arrollar al menor, tomando en consideración la velocidad a que viajaba, el ancho de la carretera, la visibilidad y la falta de obstáculos a su izquierda para poderlo así hacer.  Si bien, de acuerdo con la tabla antes citada, resulta imposible detener el automóvil antes de arrollar al menor, sin embargo, no es menos cierto que de haber atendido debidamente al manejo y conducción del vehículo, el conductor pudo haber desviado a su izquierda y haber evitado el accidente."

■■ El conductor de un vehículo de motor debe anticipar la presencia de peatones en las carreteras públicas y, por tanto, debe ejercitar aquel grado de precaución que ordinariamente y bajo las mismas circunstancias ejercitaría una persona prudente para no ocasionarles daño.  En el cumplimiento de ese deber el conductor debe mantenerse alerta en todo momento y observar la debida vigilancia (*proper lookout*) hacia ellos.  2A Blashfield, *Cyclopedia of Automobile Law & Practice*, Ed. Permanente, secs. 1254 y 1259, págs. 145 y 159, respectivamente; *Jackson* v. *Crimer*, 24 S.E.2d 603.  El deber de mantener tal vigilancia implica el de ver todo lo que está a plena vista, o sea, todo lo que el conductor pudo haber visto en la dirección en que viaja, mediante el

ejercicio de cuidado razonable. *Roselle* v. *Bingham*, 46 S.W.2d 784; *Johnson* v. *Herring et al.*, 300 Pac. 535; *Baldwin* v. *Robertson*, 172 Atl. 859; o como se dijo en el caso de *Wall* v. *Bain*, 23 S.E.2d 330:

"Es el deber del conductor de un vehículo de motor no tan sólo mirar, sino también mantenerse vigilante en la dirección en que marcha, y viene obligado por su deber de notar todo aquello que él debió haber visto y no vió."

▉ En este caso las demandadas apelantes sostienen que el menor arrollado se interpuso súbitamente en el paso del vehículo de la Stuckert Motor Company al salir desde un callejón a la carretera en momentos en que al conductor de dicho vehículo se le hacía imposible evitar el accidente. Sin embargo dicho accidente ocurrió en una carretera recta, cuando la visibilidad era buena, y cuando nada impedía al conductor del vehículo, de haber sido razonablemente cuidadoso, ver al menor caminando a paso ligero por el murito o puentecito hacia la carretera. Este hecho era o pudo ser una clara indicación de que el menor saldría a la carretera, y por lo tanto, un aviso razonable al conductor del vehículo de que debía ejercitar el mayor grado de cuidado posible para evitar arrollarle. Si bien como regla general no se requiere que un conductor anticipe que otra persona habrá de actuar negligentemente, dicha regla cede ante una indicación o movimiento en contrario de tal persona, véase 47 C.J. 705 y *Williams* v. *Henderson*, 55 S.E.2d 462, con mayor razón aún cuando se trata de un niño de 8 años de edad, ya que las reglas prevalecientes en cuanto al cuidado que debe observar el conductor de un vehículo de motor respecto a peatones adultos no son de estricta aplicación a niños de poca edad, debiendo requerirse en cuanto a estos últimos un mayor grado de cuidado. Blashfield, ob cit., Vol. 2A, sec. 1492, pág. 383.

▉▉ El hecho de que el vehículo marchara por su derecha y a una velocidad que según expresara la corte a quo era normal de acuerdo con la ley, no exonera de responsabilidad a su conductor si él ha dejado de cumplir con el deber de man-

tenerse alerta y de mirar. El incumplimiento de ese deber, bajo los hechos de este caso, constituye negligencia. Por eso actuó correctamente el tribunal a quo al concluir que como el conductor del vehículo de la Stuckert Motor Co. tuvo oportunidad de ver al niño y tomar las precauciones debidas para evitar el accidente, y no lo hizo, él responde de los daños causados. Otras circunstancias que tienden a establecer la negligencia de dicho conductor, son las siguientes: (a) aplicó los frenos del vehículo después de arrollar al menor y (b) fué después del impacto que desvió el vehículo hacia su izquierda. De haber mirado con cuidado hubiera visto al menor con tiempo suficiente para usar los frenos antes del impacto o para desviarse hacia la izquierda. Todas las circunstancias de este caso indican que el accidente se debió a la negligencia del conductor del vehículo y no a la negligencia del menor o a su negligencia contributoria. No se cometieron los dos primeros errores.

Los tres errores restantes están predicados en una premisa errónea. Se quejan las demandadas apelantes de que el tribunal a quo resolvió este caso a base de la doctrina de la última oportunidad (*last clear chance*), cuando ni los hechos alegados ni los probados dan margen a la aplicación de tal doctrina. Fundan su aserto en el lenguaje usado por la corte al concluir que habiendo tenido oportunidad el conductor del vehículo de ver al menor antes del accidente y considerando las demás circunstancias, tales como la velocidad a que corría dicho vehículo, la visibilidad en aquel sitio, ancho del puentecito, situación de la maleza o arboleda, etc., pudo dicho conductor haber desviado hacia la izquierda para no arrollar al menor. Sin embargo, una lectura cuidadosa de las conclusiones del tribunal inferior revela que la sentencia apelada no se funda en la doctrina de la última oportunidad y sí en la negligencia del conductor del vehículo, consistente dicha negligencia en haber dejado de cumplir con su deber de mirar y ver lo que estaba a su vista y pudo ver, si hubiera sido cuidadoso. Al decir que el conductor tuvo la oportunidad de des-

viar el vehículo hacia la izquierda, la corte no hace otra cosa que señalar una de las precauciones que debió tomar el conductor para evitar el accidente. Por lo tanto, se hace innecesario una ulterior consideración de estos errores. Los mismos no fueron cometidos. Con esto disponemos del recurso de las demandadas apelantes. Pasaremos a considerar ahora el de los demandantes y apelantes.

■ La única cuestión a resolver es si la compensación concedida a los demandantes es razonable. Considerando que el menor, hijo de los demandantes, contaba ocho años de edad para la fecha del accidente, que era un niño normal, y que ya había cursado su primer grado de escuela elemental, tenemos que concluir que la corte a quo no tomó en cuenta la tendencia actual de esta Corte de dar compensaciones más altas que las que se concedían anteriormente. *Graniela* v. *Yolande, Inc.*, 65 D.P.R. 107 y *Rojas* v. *Maldonado*, 68 D.P.R. 818. Por lo tanto, el error señalado por los demandantes-apelantes fué cometido. Y habiendo en la prueba base para aumentar la indemnización por concepto de angustias mentales y morales y sufrimientos físicos, a la suma de $7,000, según lo solicitan dichos apelantes en su alegato ante nos, *la sentencia apelada será modificada en tal sentido y así modificada, confirmada.*