LUIS IVÁN QUIÑONES FERRER, ETC., demandantes y apelantes, *v.* ELADIO HERNÁNDEZ ROBLES y PORTO RICAN & AMERICAN INSURANCE CO., INC., demandados y apelados.

Número 12243.

*Reasignado:* 21 de junio de 1961. *Resuelto:* 30 de junio de 1961.

---

*F. Prieto-Azuar*, abogado de los apelantes; *Córdova & González* y *Héctor Martínez Muñoz*, abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

No hay controversia sobre los hechos. La recurrida acepta la versión del accidente según éste fue descrito por los testigos del recurrente. En la tarde del 19 de mayo de 1956

un grupo de cinco personas—una mujer adulta, un joven de 16 años y tres niños—regresaban de la playa en el sector de King's Court en Santurce. Al llegar a la intersección de la Avenida McLeary y la calle King's Court, el grupo se detuvo en la acera norte de dicha avenida con el propósito de cruzarla cuando el tránsito de vehículos lo permitiera. Mientras la señora miraba en dirección este para cerciorarse de que no se aproximaban vehículos que le impidieran pasar, uno de los niños se lanzó súbitamente con ánimo de cruzar la avenida. Desgraciadamente al hacerlo recibió el impacto del lado izquierdo del vehículo de la demandada, el cual, marchando a una velocidad moderada, transitaba por la Avenida McLeary en dirección de oeste a este, o sea por el carril, opuesto a aquél frente al cual se hallaba parado el grupo. El niño cayó al pavimento lesionado, y el vehículo detuvo su marcha a una distancia de 45 pies del sitio del accidente luego de cruzar la intersección de King's Court.

El tribunal de instancia declaró sin lugar la demanda por entender que no había responsabilidad. El demandante, aquí recurrente, sostiene que existe e impugnando la sentencia recurrida señala dos errores:

### Primer Error

"La Corte *a quo* cometió grave y perjudicial error al desestimar la demanda y resolver que el conductor del vehículo no incurrió en negligencia como causa próxima del accidente, no obstante haber concluido como cuestión de hecho que el niñito fue arrollado en ocasión en que dicho conductor no sonó claxon al aproximársele, que dicho conductor tenía a la vista un grupo de niños pequeños que se disponían a cruzar también y que aquél no redujo, detuvo, ni desvió su marcha en evitación del accidente."

### Segundo Error

"El tribunal inferior cometió manifiesto error de derecho al no aplicar a los hechos del caso la doctrina de la última oportunidad ('last clear chance.')"

 Para sostener el primer error se cita el caso de *Alvarez v. Hernández*, 74 D.P.R. 493 (1953). Fue este un caso en el cual, al determinarse la existencia de responsabilidad por parte de la dueña del vehículo envuelto en el accidente, hicimos hincapié en que "el niño que fue víctima del accidente estaba con otros niños en la acera, *jugando y empujándose mutuamente*, inmediatamente antes de él lanzarse a la calle"; *los niños*, además, *estaban* corriendo y 'alborotando' en la acera"; [e]*llos no estaban estacionados fijamente en la acera ni estaban bajo la custodia y protección de una persona adulta. Estaban jugando, corriendo y empujándose mutuamente.*" (Pág. 499, énfasis suplido.) Fundándonos en la situación de hechos antes descrita resolvimos que "[la] conducta y los movimientos de los niños en la acera conllevaban una situación potencialmente peligrosa" y que tal conducta "daba lugar a que el conductor del vehículo pudiese anticipar razonablemente que uno de los niños se lanzase a la calle, *como una consecuencia del juego infantil.*" (Énfasis suplido.)

Resulta obvio, por lo tanto que la situación de hechos que dio lugar a *Alvarez v. Hernández*, es enteramente distinta de la que presenta el caso de autos. Aquí tenemos un grupo de tres niños, sosegadamente parados en la acera opuesta al carril por el cual transitaba el vehículo de la demandada, custodiados y protegidos por una señora adulta y por una joven de 16 años. Como dijimos en el citado caso de *Alvarez* (pág. 501) "[e]l hecho en sí de que un niño esté estacionado fijamente en una acera no implica, generalmente, que el conductor de un automóvil tenga que detener la marcha de su vehículo o tomar otras precauciones extraordinarias." Dijimos también que "[l]a negligencia es función de riesgos y surge del incumplimiento del deber de actuar con cuidado ante una situación peligrosa. Si determinada conducta peligrosa es anticipable, ello da lugar al deber de actuar con cuidado. La doctrina del accidente inevitable requiere, en

su aplicación a casos como el de autos, el que la conducta de la víctima sea inesperada. Si esa conducta era razonablemente anticipable y el conductor del vehículo ha tenido la oportunidad de controlar y conducir el automóvil en tal forma que el accidente se hubiera podido evitar, ello es origen de Responsabilidad." (Pág. 499.)

El *ratio dicidendi* del caso de *Álvarez*, pues, fue el hecho de que "no se trataba de adultos que estuviesen en la acera *y ni siquiera estaba envuelta una situación en que un niño estuviese estacionado fijamente en la acera. Se trataba de niños en movimiento que se estaban empujando mutuamente y la propia víctima del accidente estaba corriendo por el borde de la acera.* Evidentemente la situación era potencialmente peligrosa y evidentemente el conductor debió haber anticipado la probabilidad de que uno de los niños se lanzase a la calle." (Pág. 502, énfasis suplido.) Es enteramente claro, por lo tanto, que la doctrina etablecida por este Tribunal en el caso de *Alvarez* es de aplicación únicamente a casos en que concurren situaciones de hechos extremos y poco usuales, tales como la que allí tuvimos ante nuestra consideración. De la propia exposición que allí hicimos surge que no ha de considerarse que existe una situación peligrosa el hecho de que haya niños sosegadamente parados en una acera, especialmente cuando se trata de niños que están custodiados por personas adultas.(¹) El hecho de que no se hiciera uso del aparato de alarma no altera la conclusión a que hemos llegado. Claramente no surgía la obligación de hacer uso del aparato de alarma, pues la avenida era amplia y no había nada que

---

(¹) Tampoco concurren en el presente caso ninguna de las circunstancias que determinaron la existencia de responsabilidad por parte del demandado en *Álamo* v. *García*, 76 D.P.R. 639 (1954) colisión por el lado izquierdo de la calle, frente a una escuela minutos antes de entrar a clase a una velocidad "bastante ligera", o en *Freytes* v. *Municipio*, 80 D.P.R. 521 (1958) colisión por el lado izquierdo, grupo de niños jugando en la acera con una bola; o en *Díaz* v. *Stuckert Motor Co.*, 74 D.P.R. 519 (1953) movimiento del menor que fueron clara indicación de que éste procedería a salir a la carretera.

obstaculizara la vista de los vehículos que se aproximaban. Además nada indicaba que el niño abandonaría su sitio de seguridad. No se cometió el primer error.

 Mediante el segundo señalamiento el recurrente sostiene que el tribunal de instancia cometió manifiesto error al no aplicar a los hechos del caso la doctrina de la última oportunidad expedita.(²)

En *Figueroa* v. *Picó*, 69 D.P.R. 401 (1948) el chófer del demandado guiaba un vehículo por la Avenida Borinquen del Barrio Obrero a 20 millas por hora frente a la Escuela Padre Berríos. No redujo la velocidad al pasar frente a dicha escuela, a pesar de que le constaba que los alumnos acostumbraban abandonar el plantel para ir almorzar. La avenida allí es recta y ancha y había buena visibilidad, pues no transitaban por allí en aquel momento otros vehículos. El niño lesionado, quien tenía 5 años, 8 meses de edad, se lanzó a cruzar la avenida chocando con el picaporte de la puerta de la guagua. Luego de señalar que los conductores de vehículos de motor tienen la obligación especial de ser particularmente cuidadosos cuando transitan por un área escolar, nos expresamos así al resolver el citado caso de *Figueroa* v. *Picó*:

"Suponemos que el niño incurrió en negligencia contribuyente al cruzar la avenida corriendo y chocar con el picaporte de la guagua. Suponemos esto argüendo, no obstante la más baja norma de cuidado que, como hemos visto, se aplica a niños de tierna edad. Pero el chófer sabía que a la hora del accidente salían niños pequeños de esta escuela; tenía una clara visibilidad; y conducía su vehículo a solamente 20 millas por hora. Y lo más importante de todo, conducía su guagua en el extremo derecho de la avenida hacia la escuela mientras que el niño cruzaba casi la totalidad del ancho de esta espaciosa y recta avenida. En su consecuencia, tuvo amplia oportunidad, al acercarse a la escuela, de ver al niño mientras cruzaba la avenida.

---

(²) El accidente que motivó la acción interpuesta en este caso ocurrió con antelación a la fecha en que entró a regir la enmienda de 9 de junio de 1956 al art. 1802 del Código Civil que incorporó a nuestro derecho la doctrina de negligencia comparada. De ahí que discutamos la defensa de la última oportunidad expedita.

El chófer conducía su vehículo a mediodía en un área escolar. Como hemos visto, esto le exigía ser especialmente cuidadoso. Por tanto no puede decir que, haciendo caso omiso de la situación, iba mirando hacia adelante y no vió nada. Bajo las circunstancias, su deber era vigilar, no sólo hacia el frente si que también oblicuamente. Véanse *Aronson* v. *Ricker*, 172 S.W. 641, 642 (Mo., 1915); *Holmes* v. *Missouri Pac. Ry. Co.*, 105 S.W. 624 (Mo., 1907). Es inmaterial que como cuestión de hecho no viera al niño. Éste cruzó casi todo el ancho de la amplia avenida de la cual el chófer tenía una visibilidad clara. Por consiguiente el menor estaba dentro de la visibilidad periférica o lateral del chófer con tiempo más que suficiente para que éste pudiera evitar el accidente. No puede ahora alegar que él no vió al niño, ya que de haber estado mirando con cuidado, según era su obligación, lo habría visto. *Hornbuckle* v. *McCarty*, 243 S.W. 327 (Mo., 1922); *Dashiell* v. *Moore*, 11 A.2d 640 (Md., 1940); *Dauplaise* v. *Yellow Taxicab Co.*, 235 N.W. 771 (Wis., 1931)."

Al resolver el caso de *Figueroa* en la forma expresada estuvimos conformes con la conclusión a que había llegado el tribunal de instancia en el sentido de que, tratándose de un área escolar, que exigía del conductor del vehículo un mayor grado de cuidado, éste había sido negligente al no mantener la vigilancia necesaria para evitar el accidente. Naturalmente, según expusimos en *Sucn. Ortiz* v. *Ramírez*, 68 D.P.R. 498, 505 (1948) y reafirmamos en *Ortiz* v. *Autoridad de Transporte*, 80 D.P.R. 233 (1958) la doctrina sobre la última oportunidad expedita "da por sentada la existencia de una situación peligrosa creada por la negligencia tanto del demandante como del demandado, pero supone que hubo un momento después de ocurrir tal negligencia en que el demandado podía, y el demandante no podía, mediante el uso de los medios disponibles, evitar el accidente. No es aplicable si la emergencia es tan súbita que no hay tiempo para evitar la colisión, ya que el demandado no viene obligado a actuar instantáneamente."

En el caso de *Figueroa*, supra, la conclusión a que llegó el tribunal a quo y con la cual este Tribunal estuvo conforme

en apelación, fue de que el conductor había tenido una razonable oportunidad de evitar el accidente. Más si comparamos los hechos en el caso de autos con los del caso de *Figueroa*, observamos inmediatamente que existe una diferencia fundamental y decisiva entre ambos. El vehículo envuelto en el accidente que dio motivo al presente caso no transitaba al momento de ocurrir el accidente un área de tal naturaleza que obligara al conductor a observar un grado de cuidado mayor que el que usualmente se le exige a una persona normalmente prudente. El tribunal de instancia luego de apreciar los hechos llegó a la conclusión de que el conductor en el presente caso no había incurrido en negligencia alguna, conclusión con la cual, por la razón antes dicha estamos enteramente conformes.([3]) Sólo resta añadir que en ausencia de conducta negligente por parte del conductor, la doctrina sobre la última oportunidad expedita no es de aplicación. *Sucn. Ortiz v. Ramírez,* supra; *Ortiz v. Autoridad de Transporte,* supra.

*Procede confirmar la sentencia.*

---

([3]) Sostener lo contrario ante una situación de hechos como la que presenta el caso de autos prácticamente equivaldría a adoptar en esta jurisdicción la regla sobre responsabilidad sin culpa para regir todo caso de accidente de tránsito en que sufra lesiones un niño que inesperadamente se ha lanzado a cruzar una calle. Véase al efecto *Matos v. Pabón,* 63 D.P.R. 890 (1944) donde dijimos: "si sostuviéramos la sentencia en este caso, en efecto crearíamos una regla de responsabilidad sin que haya culpa en caso de accidentes de automóviles. Algunas personas han recomendado se establezca esta regla por legislación, acoplándola con seguro obligatorio. Quizá llegue el día en que nuestra Legislatura dé tal paso. Mientras tanto, no podemos permitir que subsista una sentencia que no está sostenida por prueba de que los demandados fueron negligentes."